# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION** | Civil Action No. 15-7658 |
| | JUDGE MICHAEL A. SHIPP |
| | JUDGE LOIS H. GOODMAN |
| THIS DOCUMENT RELATES TO: | **(ORAL ARGUMENT REQUESTED)** |
| 18-cv-15286-MAS-LHG (Northwestern Mutual Life Insurance Co.) | **Motion Day: April 15, 2019** |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

Paul C. Curnin (*pro hac vice* pending)
Craig S. Waldman (*pro hac vice* pending)
Daniel J. Stujenske (*pro hac vice* pending)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Valeant Pharmaceuticals International, Inc. and Robert L. Rosiello*
(*Additional counsel listed on signature page*)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 2

ARGUMENT .................................................................................................................... 4

I.     PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY SLUSA ...................... 4

      A.    This Court's Prior SLUSA Decisions Are Dispositive ............................................ 4

      B.    Nothing In This Case Warrants A Different Result Under SLUSA ...................... 6

            1.    This Is A Covered Class Action ................................................................ 6

            2.    Each State Law Claim Includes Allegations In Connection With Trades Of A Covered Security ................................................................. 7

II.    CERTAIN FEDERAL CLAIMS ARE UNTIMELY ...................................................... 9

      A.    The Federal Securities Claims Are Untimely In Part Under The Applicable Statute Of Limitations ............................................................................ 10

            1.    Plaintiffs Forfeited *American Pipe* Tolling By Opting Out Of The Putative Class Action Before A Class Certification Decision ................. 12

            2.    There Is No Basis To Toll The Statute Of Limitations For the Section 18 Claims Because The Class Action Did Not Include Those Claims ..... 14

      B.    Plaintiffs' Federal Securities Claims Are Barred By The Statute Of Repose To The Extent They Rest On Statements Made Before October 24, 2013 .......... 16

      C.    The Section 20(a) Control Person Claims Fail To The Extent They Are Based On Purchases After March 15, 2016 Because Plaintiffs Have Not Stated Viable Violations Of Section 10(b) ......................................................... 18

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

## Cases

*2012 Dynasty UC LLC v. Valeant Pharm. Int'l, Inc.*,
    2018 WL 6492764 (D.N.J. Dec. 10, 2018) ................................................................. *passim*

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974) ....................................................................................................... 12, 14

*Bartesch v. Cook*,
    941 F. Supp. 2d 501 (D. Del. 2013) .................................................................................... 18

*Benak v. All. Capital Mgmt. L.P.*,
    435 F.3d 396 (3d Cir. 2006) ................................................................................................ 11

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    137 S. Ct. 2042 (2017) ................................................................................................. 16, 17

*Chadbourne & Parke LLP v. Troice*,
    571 U.S. 377 (2014) ........................................................................................................... 8, 9

*Child.'s Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*,
    2011 WL 13220509 (C.D. Cal. Aug. 22, 2011) ................................................................. 15

*China Agritech, Inc. v. Resh*,
    138 S. Ct. 1800 (2018) ................................................................................................. 14, 17

*Chinn v. Giant Food, Inc.*,
    100 F. Supp. 2d 331 (D. Md. 2000) .................................................................................... 13

*City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*,
    637 F.3d 169 (2d Cir. 2011) ......................................................................................... 10, 11

*Cohen v. Telsey*,
    2009 WL 3747059 (D.N.J. Nov. 2, 2009) ......................................................................... 17

*CTS Corp. v. Waldburger*,
    134 S. Ct. 2175 (2014) ........................................................................................................ 17

*Decker v. Massey-Ferguson, Ltd.*,
    534 F. Supp. 873 (S.D.N.Y. 1981) ..................................................................................... 15

*Dekalb County Pension Fund v. Transocean Ltd.*,
    817 F.3d 393 (2d Cir. 2016) ............................................................................................... 16

*Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*,
    2018 WL 406046 (D.N.J. Jan. 12, 2018) .......................................................................... 1, 4

*F.D.I.C. v. Countrywide Fin. Corp.*,
  2012 WL 5900973 (C.D. Cal. Nov. 21, 2012)......................................................... 11

*Glater v. Eli Lilly & Co.*,
  712 F.2d 735 (1st Cir. 1983) ................................................................................... 13

*Highfields Capital I, LP v. Seaworld Ent., Inc.*,
  2019 WL 480495 (S.D. Cal. Feb. 7, 2019) ............................................................... 5

*Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 4401731   (D.N.J. Sept. 14, 2018) .................................................. *passim*

*Hubbard v. Corr. Med. Servs., Inc.*,
  2008 WL 2945988 (D.N.J. July 30, 2008).............................................................. 12

*In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*,
  995 F. Supp. 2d 291 (S.D.N.Y. 2014).............................................................. 15, 16

*In re Exxon Mobil Corp. Sec. Litig.*,
  500 F.3d 189 (3d Cir. 2007).............................................................................. 10, 16

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314 (3d Cir. 2002)................................................................................... 2

*In re Suprema Specialties, Inc. Sec. Litig.*,
  438 F.3d 256 (3d Cir. 2006).................................................................................... 18

*In re Valeant Pharm. Int'l, Inc. Sec. Litig.*,
  2017 WL 1658822 (D.N.J. Apr. 28, 2017) ........................................................... 2, 3

*In re WorldCom Sec. Litig.*,
  496 F.3d 245 (2d Cir. 2007)............................................................................. 13, 14

*Johnson v. Ry. Exp. Agency, Inc.*,
  421 U.S. 454 (1975)................................................................................................ 15

*Kozlowski v. Sheahan*,
  2005 WL 3436394 (N.D. Ill. Dec. 12, 2005) ......................................................... 13

*Kuwait Inv. Office v. Am. Int'l Grp., Inc.*,
  128 F. Supp. 3d 792 (S.D.N.Y. 2015)..................................................................... 16

*Lindner Dividend Fund, Inc. v. Ernst & Young*,
  880 F. Supp. 49 (D. Mass. 1995) ............................................................................ 15

*Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund, v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 3637514 (D.N.J. July 31, 2018)...................................................... *passim*

*Luis v. RBC Capital Markets*, *LLC*,
  2016 WL 6022909 (D. Minn. Oct. 13, 2016) ................................................................. 7, 8

*McCullough v. Advest, Inc.*,
  2017 WL 3675787 (W.D. Pa. Aug. 25, 2017) .......................................................... 17

*McMillian v. AMC Mortg. Servs., Inc.*,
  560 F. Supp. 2d 1210 (S.D. Ala. 2008).................................................................. 13

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)................................................................................................. 10

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
  547 U.S. 71 (2006)..................................................................................................... 8

*N. Sound Cap. LLC v. Merck & Co. Inc.*,
  702 F. App'x 75 (3d Cir. 2017) .............................................................................. 17

*N. Sound Cap. LLC v. Merck & Co.*,
  314 F. Supp. 3d 589 (D.N.J. 2018) ........................................................................... 5

*New York City Emps. Ret. Sys. v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 4620676 (D.N.J. Sept. 26, 2018) .............................................................. 6

*Smart-El v. Corr. Med. Servs.*,
  2008 U.S. Dist. LEXIS 44376 (D.N.J. June 5, 2008) ............................................ 12

*Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*,
  775 F. Supp. 2d 227 (D. Mass. 2011) ..................................................................... 15

*SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*,
  829 F.3d 173 (2d Cir. 2016)................................................................................... 17

*Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*,
  821 F.3d 780 (6th Cir. 2016) ................................................................................. 13

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
  802 F. Supp. 2d 1125 (C.D. Cal. 2011) ................................................................. 11

*T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*,
  2018 WL 395730 (D.N.J. Jan. 12, 2018)............................................................ 4, 11

*Taksir v. Vanguard Group*,
  903 F.3d 95 (3d. Cir. 2018).................................................................................. 9

*Thomas v. Corr. Med. Servs., Inc.*,
  2009 WL 737105 (D.N.J. Mar. 17, 2009).............................................................. 12

*Wallach v. Eaton Corp.*,
   837 F.3d 356 (3d Cir. 2016) ................................................................. 13

*Weston v. AmeriBank*,
   265 F.3d 366 (6th Cir. 2001) ............................................................... 15

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
   413 F.3d 553 (6th Cir. 2005) ........................................................... 12, 13

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
   2003 WL 25861087 (N.D. Ohio June 4, 2003) ..................................... 15

*Zarecor v. Morgan Keegan & Co., Inc.*,
   801 F.3d 882 (8th Cir. 2015) ............................................................... 15

*Zazzali v. Alexander Partners, LLC*,
   2013 WL 5416871 (D. Del. Sept. 25, 2013) ......................................... 16

**Statutes**

15 U.S.C. § 77r .................................................................................................. 7

15 U.S.C. § 78bb ............................................................................................... 6

28 U.S.C. § 1658 .......................................................................................... 9, 10

**Other Authorities**

H.R. Rep. No. 104–622 ..................................................................................... 8

Defendants Valeant Pharmaceuticals International, Inc., n/k/a Bausch Health Companies Inc. ("Valeant"), J. Michael Pearson, and Robert L. Rosiello (collectively "Defendants") respectfully submit this memorandum of law pursuant to Federal Rule of Civil Procedure 12(b)(6) in support of their motion to dismiss Counts I, II, III, VII, and VIII of the Complaint in full and Counts IV, V, and VI in part.

## PRELIMINARY STATEMENT

The Court has held—in four separate opinions—that state law claims brought by opt-out plaintiffs in these related actions are preempted by the Securities Litigation Uniform Standards Act ("SLUSA"). *See, e.g.*, *2012 Dynasty UC LLC v. Valeant Pharm. Int'l, Inc.*, 2018 WL 6492764, at *3 (D.N.J. Dec. 10, 2018) ("The Court . . . is satisfied that the instant action is a covered class action that triggers SLUSA preemption.").[1]  Nevertheless, Plaintiffs have filed a complaint asserting violations of N.J. RICO and common law, and declined to withdraw those claims in light of the Court's four prior opinions.  Accordingly, Defendants are compelled to bring this motion to seek dismissal of the state law claims.

As to Plaintiffs' federal-law claims, they are untimely to the extent that they are based on purchases of Valeant securities from March 16, 2016 through April 15, 2016.  While the remainder of Plaintiffs' federal-law claims were tolled by agreement of the parties, that agreement covered only claims related to purchases of Valeant securities prior to March 16, 2016.[2]  For those claims that were not tolled by agreement, the applicable two-year statute of

---

[1] *See also Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund, v. Valeant Pharm. Int'l, Inc.*, 2018 WL 3637514, at *9–10 (D.N.J. July 31, 2018); *Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 406046, at *6 (D.N.J. Jan. 12, 2018); *Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*, 2018 WL 4401731, at *3–5, 5 n.16 (D.N.J. Sept. 14, 2018).

[2] Defendants Howard B. Schiller and Tanya Carro were not parties to the tolling agreement and, as such, have additional periods of time subject to dismissal.

limitations started running when a reasonably diligent plaintiff would have been aware of its claims.  Since Plaintiffs filed this action more than three years after the first investors sued Valeant asserting the same claims, and more than two years after class plaintiffs filed a consolidated complaint asserting such claims, they are untimely.

For these reasons, Defendants respectfully request that the Court dismiss the N.J. RICO, common law fraud, and negligent misrepresentation claims (Counts I, II, III, VII, and VII) in full pursuant to SLUSA and the claims under Sections 10(b), 18, and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") (Counts IV, V, and VI) to the extent that they are based on purchases of Valeant securities from March 16, 2016 through April 15, 2016.

## BACKGROUND[3]

The underlying factual allegations have been set forth in the Court's prior decisions.  *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822, at *1–9 (D.N.J. Apr. 28, 2017); *Lord Abbett*, 2018 WL 3637514, at *1–2.  The following facts are pertinent to (1) SLUSA's applicability to the state law claims and (2) the timeliness of Plaintiffs' federal securities claims.

Plaintiffs are sophisticated investment funds that purchased an unspecified quantity of Valeant common stock and notes between January 15, 2013 and April 15, 2016.  Compl. ¶¶ 19– 21.  Plaintiffs allege that Defendants artificially inflated the price of that stock by misrepresenting (1) the extent to which volume contributed to Valeant's revenue growth; (2) Valeant's relationship with the specialty pharmacy Philidor Rx Services, LLC; (3) Valeant's financials and compliance with Generally Accepted Accounting Principles ("GAAP"); and (4) the adequacy of Valeant's internal controls.  *Id.* ¶¶ 127–28.

---

[3] This background is drawn from the allegations in the Complaint, which are accepted as true for purposes of this motion to dismiss only, and from other documents properly considered on a motion to dismiss.  *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1322–23, 1331 (3d Cir. 2002).

The first class action against Valeant was filed on October 22, 2015, based on the same core facts alleged here. *See Potter v. Valeant Pharm. Int'l, Inc.*, No. 15-cv-7658, Dkt. No. 1 at ¶¶ 6, 16, 23. Three more class action complaints quickly followed, repeating the same allegations.[4] Valeant disclosed these lawsuits in its quarterly filings.[5] A consolidated Class Action Complaint was filed on June 24, 2016. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658 (the "Class Action"), Dkt. No. 80. On April 28, 2017, this Court denied defendants' motions to dismiss the class plaintiffs' Exchange Act claims, among others. *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, 2017 WL 1658822. On September 20, 2018, an Amended Class Action Complaint was filed, adding new claims against defendants not named here, but "leav[ing] unchanged the prior allegations." *In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-cv-7658, Dkt. No. 352 at 1 n.1. Plaintiffs' allegations here closely mirror the original Class Action Complaint's claims (and the identical Amended Class Action Complaint's claims)—often verbatim.[6]

Thirty opt-out actions, including this one, followed the filing of the Class Action Complaint. Six of the opt-outs were filed by Plaintiffs' counsel beginning on August 23, 2017. All contain nearly identical factual allegations to the Complaint here. The first Section 18 claims

---

[4] *See Chen v. Valeant Pharm. Int'l, Inc.*, No. 15-cv-7679, Dkt. No. 1 (Oct. 23, 2015); *Yang v. Valeant Pharm. Int'l, Inc.*, No. 15-cv-7746, Dkt. No. 1 (Oct. 27, 2015); *Fein v. Valeant Pharm. Int'l, Inc.*, No. 15-cv-7809, Dkt. No. 1 (Oct. 30, 2015).

[5] Hernandez Decl. Ex. 1 (Valeant 3Q 2015 10-Q) at 33; Ex. 2 (Valeant 2015 10-K) at F-79; Ex. 3 (Valeant 1Q 2016 10-Q) at 35; Ex. 4 (Valeant 2Q 2016 10-Q) at 38–39.

[6] *Compare, e.g.*, Compl. ¶ 127 (alleging defendants misrepresented that "Valeant's reported financials for the third and fourth quarters and full year of 2014, and the first nine months of 2015 complied with GAAP, and that the Company's financial guidance for 2016 had a reasonable basis in fact") *with* Class Compl. ¶ 482 (alleging defendants misrepresented "Valeant's reported financials for the third and fourth quarters and full year of 2014 and the first nine months of 2015 were prepared in violation of GAAP and its financial guidance for 2016 had no reasonable basis in fact").

based on the same factual allegations were filed against Valeant on August 15, 2016, more than

two years before this Complaint was filed, and survived a motion to dismiss. *T. Rowe Price*

*Growth Stock Fund, Inc. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 395730, at *3–4 (D.N.J. Jan. 12,

2018).

On October 24, 2018, Plaintiffs filed this action, bringing claims under N.J. RICO,

common law fraud, and negligent misrepresentation premised on the same securities fraud

allegations as in previous opt-out cases.  Compl. ¶¶ 391–416, 441–58.  Plaintiffs also allege that

all defendants violated Section 10(b) of the Exchange Act, that defendants Valeant and Messrs.

Pearson and Rosiello violated of Section 18 of the Exchange Act, and that defendants Pearson,

Schiller, and Rosiello violated Section 20(a) of the Exchange Act. *Id.* ¶¶ 417–40.

## <u>ARGUMENT</u>

## I.    PLAINTIFFS' STATE LAW CLAIMS ARE PREEMPTED BY SLUSA

The Court has repeatedly held that state law claims brought by opt-out plaintiffs in these

related actions are preempted by SLUSA.  *See 2012 Dynasty*, 2018 WL 6492764, at *3; *Lord*

*Abbett*, 2018 WL 3637514, at *9–10; *Discovery Glob.*, 2018 WL 406046, at *6; *Hound Partners*,

2018 WL 4401731, at *3–5, 5 n.16.

### A.    This Court's Prior SLUSA Decisions Are Dispositive

Plaintiffs assert precisely the same set of state law claims that the Court has repeatedly

dismissed under SLUSA.  In multiple cases, the Court has dismissed N.J. RICO and common

law claims arising from purchases of Valeant securities:

- In *Discovery Global*, this Court dismissed common law negligent misrepresentation claims by purchasers of Valeant notes and common stock pursuant to SLUSA.  2018 WL 406046, at *6.

- In *Lord Abbett*, plaintiffs tried to avoid the *Discovery Global* decision by arguing that Valeant notes did not constitute "covered securities." 2018 WL 3637514, at *9. The Court rejected the argument and dismissed the state law claims. *Id.* at *9–10. The Court determined it need not reach the question of whether the Valeant notes are "covered securities" because "the underlying fraud involves a 'covered' security" and thus SLUSA applies. *Id.*

- In *Hound Partners*, plaintiffs attempted to avoid SLUSA's application by arguing that they were not a "covered class" because they had taken "affirmative steps to avoid coordination." 2018 WL 4401731, at *4. This Court rejected that argument and held that SLUSA preempted N.J. RICO and common law claims arising from purchases of Valeant common stock. *Id.* at *3–5, 5 n.16.

- In *2012 Dynasty*, plaintiffs argued that SLUSA did not apply to their N.J. RICO claims, and suggested that a recent Supreme Court decision in *Cyan, Inc. v. Beaver County Employees Retirement Fund*, 138 S. Ct. 1061 (2018), undermined this Court's prior decisions on the meaning of a "covered class action." 2018 WL 6492764, at *1. This Court *again* rejected plaintiffs' interpretation and held that SLUSA preempted N.J. RICO claims. *Id.* at *3.[7]

Indeed, as the Court most recently noted in *2012 Dynasty*, "[t]he Court has already determined that certain state law claims, asserted by similarly situated plaintiffs alleging similar facts and theories of law as Plaintiffs assert here, were preempted by SLUSA." 2018 WL 6492764, at *3 n.2 (citing *Discovery Glob.*, 2018 WL 406046, at *6). No party has moved for reconsideration of these decisions, and other courts have cited these decisions in dismissing similar state law claims. *See Highfields Capital I, LP v. Seaworld Ent., Inc.*, 2019 WL 480495, at *7–9 (S.D. Cal. Feb. 7, 2019) (relying on *Hound Partners* and *Discovery Global* to find an opt-out plaintiff's state law claim preempted by SLUSA); *N. Sound Cap. LLC v. Merck & Co.*, 314 F. Supp. 3d 589, 608 (D.N.J. 2018) (citing *Discovery Global* in dismissing opt-out plaintiffs' state-law claims under SLUSA). As such, Plaintiffs' state law claims should be dismissed. *See,*

---

[7] This Court also ordered the dismissal of N.J. RICO and common law claims arising from purchases of Valeant notes in *Blackrock Global Allocation Fund, Inc., et al. v. Valeant Int'l, Inc., et al.*, after the plaintiffs agreed to dismiss their state law claims in light of the Court's decisions in *Lord Abbett* and *Hound Partners*. No. 18-cv-0343, Dkt. No. 55.

*e.g.*, *New York City Emps. Ret. Sys. v. Valeant Pharm. Int'l, Inc.*, 2018 WL 4620676, at *3 (D.N.J. Sept. 26, 2018) (stating that "[t]o the extent the Court has already addressed certain issues in *Lord Abbett*, the Court refers the parties to the detailed Memorandum Opinion it issued on July 31, 2018"); *Hound Partners*, 2018 WL 4401731, at *3 (referring to a past memorandum opinion and applying "the same reasoning" to motions which "mirror the issues raised" in a related case).

### B.    Nothing In This Case Warrants A Different Result Under SLUSA

There is nothing that distinguishes this case from the above results.  These cases are part of a "covered class action" and the state law claims in each "allege[] . . . a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1).

### 1.    This Is A Covered Class Action

As this Court held most recently in *2012 Dynasty*, "the instant action is a covered class action that triggers SLUSA preemption" because "this group of lawsuits involves common questions of law and fact and damages are sought for more than fifty persons."  2018 WL 6492764, at *3 (citing 15 U.S.C. § 78bb(f)(5)(B)(ii)).  The Court has already rejected attempts to exclude certain plaintiffs from the fifty-plaintiff count, *id.*, and attempts to argue that the actions are not "proceed[ing] as a single action for any purpose" so as to trigger preemption.  *Hound Partners*, 2018 WL 4401731, at *3.  Even in *Hound Partners*, where plaintiffs actively resisted coordination, the Court applied SLUSA because the case was managed with the other actions and was premised on the same allegations as the Class Action and thirty opt-out actions.  2018 WL 4401731, at *4.  The level of coordination among these actions has only increased with the entry of the October 12, 2018 Case Management Order, which this Court has held "[a]t the least .

. . establishes that this matter and the [thirty] other matters are 'proceed[ing] as a single action for any purpose.'" *2012 Dynasty*, 2018 WL 6492764, at *3.

> **2.   Each State Law Claim Includes Allegations In Connection With Trades Of A Covered Security**

Defendants expect Plaintiffs' latest effort to avoid SLUSA will be an argument that Valeant notes are not "covered securities" and/or that the Court was incorrect to hold in *Lord Abbett* that the alleged misrepresentations were made in connection with trades of covered securities regardless of whether Valeant notes are "covered securities."  In *Lord Abbett*, as here, plaintiffs purchased Valeant notes and alleged that Defendants made misrepresentations affecting Valeant's stock price.  2018 WL 3637514, at *10; Compl. ¶ 395.  The Court held that regardless of whether the notes were "covered securities," the alleged misrepresentations were material to transactions involving covered securities.  *Id.*  Any challenges to the *Lord Abbett* reasoning would be wrong.

*First*, both Valeant notes and stock are "covered securities" under SLUSA.  A "covered security" includes securities listed on the New York Stock Exchange ("NYSE") and any security "of the same issuer that is . . . a senior security to a security" listed on the NYSE.  15 U.S.C. § 77r(b)(1).  Valeant's stock trades on the NYSE, (Compl. ¶ 22), and the Valeant notes are "senior unsecured obligations . . . ranking equally in right of payment with" Valeant's "existing and future unsecured and unsubordinated indebtedness."  Exs. 5–11 (Offering Circulars).  The Valeant notes are therefore senior to Valeant's stock and constitute "covered securities."  Indeed, this was precisely the case in *Luis v. RBC Capital Markets, LLC*, 2016 WL 6022909, at *6 (D. Minn. Oct. 13, 2016) a case cited in *Lord Abbett*, in which notes were found to be "covered securities" under SLUSA because they were "senior unsecured debt obligations" that ranked "equally with all of [the issuer's] other unsecured and unsubordinated debt."  2016 WL 6022909,

at *6 (D. Minn. Oct. 13, 2016).  The *RBC* court recognized that holding otherwise would "ignore both the text of the statute and the legislative history behind [SLUSA]" and "artificially narrow the plain language of the statute."  *Id.* at *7 (citing H.R. Rep. No. 104–622, at 30 (1996)) ("[SLUSA] is intended to afford to issuers of debt securities the same benefits of preemption as are enjoyed by issuers of equity securities.").

*Second*, even if the notes at issue were not covered securities (they are), this Court correctly held in *Lord Abbett* that SLUSA still applies because "the underlying fraud involves a 'covered' security [namely, common stock], which subsequently impacted the price of the notes at issue."  *Lord Abbett*, 2018 WL 3637514, at *9.  The Court correctly recognized that the Supreme Court's decisions in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006) and *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 387 (2014), compel this broad reading of SLUSA.  *Lord Abbett*, 2018 WL 3637514, at *9.  For example, in *Troice*, the Supreme Court explained that in order for SLUSA to apply, a misrepresentation must merely have a "material connection with a transaction in a covered security."  *Id.* (citing *Troice*, 571 U.S. at 387).  *Troice* held that this condition was not satisfied where plaintiffs did not allege that "the defendants' misrepresentations led anyone to buy or sell (or to maintain positions in *covered* securities)."  571 U.S. at 381, 396.  By contrast, this Court explained in *Lord Abbett* that "[while] the plaintiffs in *Troice* could not link their purchase to any 'transactions in covered securities,' all of Plaintiffs' claims here originate from fraudulent statements that caused Valeant stock to trade at inflated prices."  2018 WL 3637514, at *9.  This Court held that plaintiffs had alleged "exactly the type of scheme that SLUSA was intended to preempt" because "Plaintiffs' [state law] claims are inextricably linked to an alleged fraud that caused the price of a 'covered security,' Valeant stock, to artificially inflate, which directly impacted the notes."  *Id.* at *10.

The same reasoning applies here, where Plaintiffs likewise allege that they "purchased Valeant securities" (both common stock and notes) "at prices that were materially inflated as a result of the misrepresentations." *See* Compl. ¶¶ 1, 6, 21, 357–61.  Here, unlike the *Lord Abbett* plaintiffs (who only purchased Valeant notes), Plaintiffs purchased both common stock and notes, so there is an even greater link between the alleged misrepresentations and the purchase of common stock. *See* Compl. ¶ 21.

The Third Circuit's recent decision in *Taksir v. Vanguard Group*, 903 F.3d 95 (3d. Cir. 2018), reaffirms this Court's reading of *Troice*.  In *Taksir*, the plaintiffs alleged that defendant Vanguard, an investment services company, had overcharged sales commissions. *Id.* at 96.  The Third Circuit held that SLUSA was inapplicable because the overcharged commissions were not material to the plaintiffs' decisions to purchase securities. *Id.* at 99–100.  In other words, the alleged fraud (overcharges) were independent of the price of the securities. *Id.* at 100.  The *Taksir* court expressly distinguished those facts from the typical securities fraud case, like the one here, where plaintiffs allege that defendants' fraud manipulated stock prices. *Id.* (noting that "the facts of this case are in plain contrast to [a case concerning] the fraudulent manipulation of stock prices").  Unlike *Taksir*, Plaintiffs assert that Defendants' alleged fraudulent misrepresentations were material to the decision to buy Valeant notes and stock. *See Troice*, 571 U.S. at 397.

## II.   CERTAIN FEDERAL CLAIMS ARE UNTIMELY

Plaintiffs' federal claims based on purchases of Valeant securities made from March 16, 2016 through April 15, 2016 are also time barred, as those claims were not covered by the parties' tolling agreement.  Section 10(b) claims must be brought within "2 years after the discovery of the facts constituting the violation" and "5 years after such violation."  28 U.S.C. § 1658(b).  The two-year limitations period is a statute of limitations and the five-year period a

statute of repose.  *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 199 (3d Cir. 2007).  This Court has applied the same time periods to Section 18 claims.  *Hound Partners*, 2018 WL 4401731, at *6.[8]

The statute of limitations period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'— whichever comes first."  *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 653 (2010) (quoting 28 U.S.C. § 1658(b)(1)).  A fact is deemed "discovered" when "a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss."  *Pension Tr. Fund for Operating Engineers v. Mortgage Asset Secur. Trans., Inc.*, 730 F.3d 263, 275 (quoting *City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)).  The statute of repose, on the other hand, runs from "the date of the alleged misrepresentation."  *Exxon*, 500 F.3d at 200.

This Complaint was filed more than two years after a reasonably diligent plaintiff would have discovered the alleged basis for such claims, and more than five years after certain alleged misstatements were made.  Plaintiffs' non-tolled federal securities claims based on purchases from March 16, 2016 through April 15, 2016 should therefore be dismissed.

## A.    The Federal Securities Claims Are Untimely In Part Under The Applicable Statute Of Limitations

The filing of the class actions demonstrate that reasonably diligent plaintiffs had sufficient information in October 2015—and even more in June 2016—to file suit.  Yet Plaintiffs

---

[8] In *Hound Partners,* this Court rejected Defendants' argument that a one-year statute of limitations and three-year statute of repose applies to Section 18 claims.  Defendants do not reargue those points here.

waited more than two years to bring this case alleging the same facts.  As a matter of law, reasonably diligent plaintiffs are deemed aware of any class actions bringing substantially similar claims to those they might bring, and will "undertake an investigation based on 'the filing of related lawsuits,' 'news articles and analyst's [sic] reports,' and 'prospectuses, quarterly reports, and other information related to their investments'" to determine whether they have viable causes of action.  *Pension Tr. Fund*, 730 F.3d at 276–78 (quoting *Benak ex. rel. All. Premier Growth Fund v. All. Cap. Mgmt. L.P.*, 435 F.3d 396, 400, 403 n.20 (3d Cir. 2006)).  Thus, by October 22, 2015, when the first securities fraud class action complaint was filed against Valeant, Plaintiffs were on notice of their claims.  *Id.* at 276–77.

Moreover, by June 24, 2016 when class plaintiffs filed their consolidated complaint, it is indisputable that a reasonably diligent plaintiff had sufficient information to bring claims capable of surviving a 12(b)(6) motion to dismiss.[9]  *See F.D.I.C. v. Countrywide Fin. Corp.*, 2012 WL 5900973, at *4–8 (C.D. Cal. Nov. 21, 2012) (dismissing securities claims as untimely under the *Merck* discovery standard where similar claims filed before the applicable statute of limitations cutoff survived 12(b)(6) motions);  *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1137–39 (C.D. Cal. 2011) (citing *City of Pontiac*, 637 F.3d at 174) (holding that the statute of limitations begins to run even if plaintiff does not possess "every conceivable fact that it will ultimately use to prove its case" because "[o]ther plaintiffs recognized that such facts were available" at the time of the first lawsuit, and those complaints adequately pleaded all elements of the claims).  Accordingly, the statute of limitations began running no later than the

---

[9] The first Section 18 claims based on the same factual allegations were filed on August 15, 2016.  *T. Rowe Price*, 2018 WL 395730, at *3–4.  That action was filed more than two years before Plaintiffs filed this lawsuit.

filing of the Class Complaint on June 24, 2016—and likely far earlier—and expired prior to October 24, 2018 when Plaintiffs filed this action.

> 1.    **Plaintiffs Forfeited *American Pipe* Tolling By Opting Out Of The Putative Class Action Before A Class Certification Decision**

By electing to opt out of the Class Action before a decision on class certification, Plaintiffs have forfeited tolling that might otherwise be available under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).  Courts in this district have unanimously "held that a plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine."  *Thomas v. Corr. Med. Servs., Inc.*, 2009 WL 737105, at *4 (D.N.J. Mar. 17, 2009) (Hillman, J.) (quoting *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 568 (6th Cir. 2005)) (dismissing opt-out action filed after the statute of limitations had run).  Adopting the Sixth Circuit's holding in *Wyser-Pratte*, Judge Hillman found that "the purposes of *American Pipe* tolling"—avoiding the unnecessary burden of additional lawsuits filed while class certification is pending—"are not furthered when plaintiffs file independent actions before a decision on the issue of class certification."  *Id.* at *4; *see also Smart-El v. Corr. Med. Servs.*, 2008 U.S. Dist. LEXIS 44376, at *9 (D.N.J. June 5, 2008) (Hillman, J.) (same).  In *Hubbard v. Corr. Med. Servs., Inc.*, Judge Wigenton also followed *Wyser-Pratte* and dismissed an opt-out action as untimely, holding that "[a] plaintiff who files an independent lawsuit without waiting for a determination on class certification does not get the benefit of class action tolling."  2008 WL 2945988, at *7 (D.N.J. July 30, 2008).

These decisions are in accord with the rule in other circuits.  The Sixth Circuit recently reaffirmed its holding in *Wyser-Pratte* that the judicial economy encouraged by *American Pipe* would not be served by allowing parties who opt out before a class certification decision to

benefit from that tolling, affirming the dismissal of such claims as untimely. *Stein v. Regions Morgan Keegan Select High Income Fund, Inc.*, 821 F.3d 780, 789 (6th Cir. 2016).  In *Wyser-Pratte*, that court had held that "[t]he purposes of *American Pipe* tolling are not furthered when plaintiffs file independent actions before decision on the issue of class certification, but are when plaintiffs delay until the certification issue has been decided."  413 F.3d at 569; *see also Glater v. Eli Lilly & Co.*, 712 F.2d 735, 739 (1st Cir. 1983) ("The policies behind Rule 23 and *American Pipe* . . . would be disserved by guaranteeing a separate suit at the same time that a class action is ongoing."); *McMillian v. AMC Mortg. Servs., Inc.*, 560 F. Supp. 2d 1210, 1214–15 (S.D. Ala. 2008) (declining to find *American Pipe* tolling where class certification had not been decided because such a rule would allow plaintiffs to rely on a putative class action "opportunistically and only to the extent necessary to validate otherwise time-barred claims"); *Kozlowski v. Sheahan*, 2005 WL 3436394, at *3 (N.D. Ill. Dec. 12, 2005) (citing *Wyser-Pratte* and *Glater*) ("The weight of authorities militates against applying the tolling doctrine to the present case because class certification . . . is pending."); *Chinn v. Giant Food, Inc.*, 100 F. Supp. 2d 331, 334–35 (D. Md. 2000) (holding that the *American Pipe* "rule does not apply to protect the individual plaintiff who files an independent action after the statute of limitations has expired but before a certification decision has been rendered in a timely class complaint which supposedly includes the plaintiff") (quotations and citation omitted).[10]

---

[10] There is a circuit split as to whether opt-out plaintiffs can benefit from *American Pipe* tolling before a class certification decision. *Compare Wyser-Pratte*, 413 F.3d at 568–69 and *Glater*, 712 F.2d at 739 *with In re WorldCom Sec. Litig.*, 496 F.3d 245, 256 (2d Cir. 2007).  Courts in this District have unanimously rejected the overbroad reading of *American Pipe* allowing tolling for pre-class certification opt-out actions.  And while the Third Circuit held that intervenors in a class action may benefit from *American Pipe* in *Wallach v. Eaton Corp.*, 837 F.3d 356, 373–74 (3d Cir. 2016), it has never expanded *American Pipe* to individual actions filed before a decision on class certification.

The Supreme Court's recent decision in *China Agritech, Inc. v. Resh*, which rejected an expansion of *American Pipe* tolling, buttressed the rationale for these decisions.  138 S. Ct. 1800 (2018).  The *China Agritech* Court noted that "[t]he watchwords of *American Pipe* are efficiency and economy of litigation," *id.* at 1811, and declined to expand the tolling doctrine beyond the contexts from which *American Pipe* and its progeny arose, which "addressed only putative class members who wish to sue individually *after a class-certification denial*."  *Id.* at 1802 (emphasis added).  The Court held that a plaintiff could not rely on *American Pipe* tolling to bring a successive class action after a class certification denial because "[t]he 'efficiency and economy of litigation' that support tolling individual claims" filed after a class certification denial would not support such a rule.  *Id.* at 1806 (quoting *American Pipe*, 414 U.S. at 553).  This is because "*American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those claims *until after a class-certification denial*."  *Id.* (emphasis added).  "If certification is denied, only then would it be necessary to pursue claims individually."  *Id.* at 1807.  *China Agritech* demonstrates that courts in this district and elsewhere have been correct to decline to apply *American Pipe* tolling to claims brought before class certification is decided, as permitting tolling in such circumstances would reduce, rather than enhance, judicial economy.  Conversely, in emphasizing that the purpose of *American Pipe* is to maximize judicial economy by reducing the number of lawsuits filed before class certification, *China Agritech* rejected the reasoning of those courts holding that opt-out plaintiffs can benefit from *American Pipe* before a decision on class certification.  *See, e.g.*, *WorldCom*, 496 F.3d at 256.

> **2.**     **There Is No Basis To Toll The Statute Of Limitations For the Section 18 Claims Because The Class Action Did Not Include Those Claims**

The filing of the Class Action did not toll the statute of limitations period for the Section 18 claims for the additional reason that the Class Action did not (and could not) include Section

18 claims.  "[T]he tolling effect given to the timely prior filings in *American Pipe . . .* depend[s] heavily on the fact that those filings involve[] exactly the same cause of action subsequently asserted."  *Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 467 (1975).  Thus, "*American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action."  *Zarecor v. Morgan Keegan & Co., Inc.*, 801 F.3d 882, 888 (8th Cir. 2015); *see also Weston v. AmeriBank*, 265 F.3d 366, 368 (6th Cir. 2001) ("Under *American Pipe*, the statute of limitations for putative class members of the original class is tolled only for substantive claims that were raised, or could have been raised, in the initial complaint.").  Unlike Plaintiffs' Complaint, the Class Action Complaint does not include Section 18 claims, and "[t]he legal standards for proving Section 18 and Section 10(b) claims are sufficiently distinct that filing a class action claim alleging a violation of Section 10(b) does not toll the statute of limitations for a Section 18 claim."  *Special Situations Fund III, L.P. v. Am. Dental Partners, Inc.*, 775 F. Supp. 2d 227, 246 (D. Mass. 2011); *see also Child.'s Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, 2011 WL 13220509, at *4 (C.D. Cal. Aug. 22, 2011) ("Section 18's actual reliance requirement precludes class-action treatment.  Therefore, almost by definition, filing a § 10(b) class action does not put a defendant on notice that it will be called upon to defend a § 18 claim."); *In re Bear Stearns Cos., Inc. Sec., Deriv., and ERISA Litig.*, 995 F. Supp. 2d 291, 308 (S.D.N.Y. 2014) (dismissing Section 18 claims as untimely because "only the claims asserted in a class action are tolled").[11]

---

[11] *See also Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 2003 WL 25861087, at *18–19 (N.D. Ohio June 4, 2003) ("Given the meaningful distinctions between the . . . § 10(b) claims and those asserted . . . under § 18, the Court finds that class tolling does not apply."); *Lindner Dividend Fund, Inc. v. Ernst & Young*, 880 F. Supp. 49, 54–55 (D. Mass. 1995) (Section 18 claims not tolled by class action); *Decker v. Massey-Ferguson, Ltd*., 534 F. Supp. 873, 883 (S.D.N.Y. 1981), *rev'd in part on other grounds*, 681 F.2d 111 (2d Cir. 1982) ("The legal standards for bringing an action under [Section] 18 are significantly different from those for 10(b), and the

**B.      Plaintiffs' Federal Securities Claims Are Barred By The Statute Of
Repose To The Extent They Rest On Statements Made Before
October 24, 2013**

Plaintiffs' claims (for purchases between March 16, 2016 and April 15, 2016) are also

barred by the statute of repose to the extent that they are based on statements made prior to

October 24, 2013—five years before this action was filed.  As the Supreme Court recently

reaffirmed, statutes of repose are meant to "grant complete peace to defendants" by barring

liability after a certain time.  *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc*., 137 S. Ct. 2042, 2052

(2017).  The Third Circuit has unambiguously held that the "repose period applicable to § 10(b)

claims as set out in . . . [28 U.S.C. §] 1658(b)(2) begins to run on the date of the alleged

misrepresentation."  *Exxon*, 500 F.3d at 200; *see also Dekalb County Pension Fund v.

Transocean Ltd.*, 817 F.3d 393, 411 (2d Cir. 2016) (explaining that statutes of repose run from a

"defendant's last culpable act," namely "the date of the violation").  As such, claims arising from

statements and SEC filings made before October 24, 2013, are untimely.  *See Exxon*, 500 F.3d at

202 (affirming dismissal of Section 10(b) and 20(a) claims based on alleged misrepresentations

made more than five years before action was brought); *Zazzali v. Alexander Partners, LLC*, 2013

WL 5416871, at *10–11 (D. Del. Sept. 25, 2013) (dismissing Section 10(b) claims based on

misrepresentations made more than five years before complaint was filed); *Kuwait Inv. Office v.

Am. Int'l Grp., Inc*., 128 F. Supp. 3d 792, 807 (S.D.N.Y. 2015) ("[B]ecause the statute of repose

runs from the date of each relevant misstatement or omission, the Exchange Act claims . . . must

be dismissed to the extent the claims are based on misstatements or omissions made more than

five years before the respective filing dates."); *In re Bear Stearns*, 995 F. Supp. 2d at 307

---

original complaint cannot be regarded as having somehow put defendants on notice of a potential
claim under [Section] 18.").

(dismissing Section 18 claims alleging misstatements made in SEC filings beyond repose period).[12]

American Pipe tolling never applies to a statute of repose. ANZ, 137 S. Ct. at 2055; see also China Agritech, 138 S. Ct. at 1809 (noting that the time to file claims governed by Section 1658(b)(2)'s five-year statute of repose "has a finite end"); N. Sound Cap. LLC v. Merck & Co. Inc., 702 F. App'x 75, 81 (3d Cir. 2017) (reversing denial of motion to dismiss Section 10(b) and 20(a) claims because "ANZ made clear that American Pipe recognized a form of equitable tolling that does not apply to the federal securities laws' statute of repose"). This is because, "[b]y establishing a fixed limit, a statute of repose implements a 'legislative decisio[n] that as a matter of policy there should be a specific time beyond which a defendant should no longer be subjected to protracted liability.'" ANZ, 137 S. Ct. at 2051 (quoting CTS Corp. v. Waldburger, 573 U.S. 1, 9 (2014)). This objective, "to grant complete peace to defendants, supersedes" the application of the equity-based American Pipe tolling rule. Id. at 2052. Plaintiffs' Section 10(b) and Section 18 claims arising from statements made in January and February 2013 and 10-Qs filed in May and August 2013 therefore must be dismissed.[13] See Cohen v. Telsey, 2009 WL 3747059, at *9 (D.N.J. Nov. 2, 2009) (holding that "tolling principles do not apply" to Section 1658(b)'s statute of repose and dismissing Section 10(b) and 20(a) claims brought more than five years after alleged misrepresentation); SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C., 829

---

[12] In McCullough v. Advest, Inc., cited by Plaintiffs' counsel in a related action, the court overlooked Exxon's clear dictate and the purpose of statutes of repose reaffirmed in ANZ by measuring a statute of repose for all claims from the last misstatement alleged in the complaint. 2017 WL 3675787, at *3 (W.D. Pa. Aug. 25, 2017).

[13] The alleged misstatements made before October 24, 2013 that cannot give rise to Section 10(b) and Section 18 liability here include those discussed in paragraphs 130–33, 171–73, 176, 204, 212–13 of the Complaint.

F.3d 173, 77 (2d Cir. 2016) (holding that *American Pipe* does not toll § 1658(b)(2)'s statute of

repose and dismissing claims filed more than five years after alleged misrepresentations).

> **C.     The Section 20(a) Control Person Claims Fail To The Extent They Are Based On Purchases After March 15, 2016 Because Plaintiffs Have Not Stated Viable Violations Of Section 10(b)**

Plaintiffs also allege control person liability.  Compl. ¶¶ 434–40.  To sustain these claims,

Plaintiffs first "must prove . . . a primary violation of the securities laws."  *In re Suprema*

*Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006).  Because Plaintiffs' Section 10(b)

claims based on purchases from March 16, 2016 through April 15, 2016, are barred by the statute

of limitations, Plaintiffs' control person claims fail to the same extent as a matter of law.  *See*

*Bartesch v. Cook*, 941 F. Supp. 2d 501, 513 (D. Del. 2013).

**<u>CONCLUSION</u>**

For the foregoing reasons, Defendants respectfully request that the Court dismiss I, II, III,

VII, and VIII of the Complaint in full and Counts IV, V, and VI in part.

18

DATED: February 8, 2019

**DEBEVOISE & PLIMPTON LLP**

/s/  *Matthew Petrozziello*
Matthew Petrozziello
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836

Jonathan R. Tuttle (*pro hac vice*
forthcoming)
Ada F. Johnson (*pro hac vice* forthcoming)
801 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 383-8000
Fax: (202) 383-8118

*Counsel for J. Michael Pearson*

**McCARTER & ENGLISH, LLP**

/s/  *Richard Hernandez*
Richard Hernandez
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 848-8615
Fax: (973) 297-6615

*Local counsel for Valeant Pharmaceuticals
International, Inc. and Robert L. Rosiello,*

**SIMPSON THACHER & BARTLETT LLP**

Paul C. Curnin (*pro hac vice* pending)
Craig S. Waldman (*pro hac vice* pending)
Daniel J. Stujenske (*pro hac vice* pending)
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Fax: (212) 455-2502

*Counsel for Valeant Pharmaceuticals
International, Inc. and Robert L. Rosiello*