## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: VALEANT PHARMACEUTICALS INTERNATIONAL, INC. SECURITIES LITIGATION _____ THIS DOCUMENT RELATES TO: 18-cv-15286-MAS-LHG (Northwestern Mutual Life Insurance Co.) | Civil Action No. 15-7658 JUDGE MICHAEL A. SHIPP JUDGE LOIS H. GOODMAN **(ORAL ARGUMENT REQUESTED)** **Motion Day: April 15, 2019** |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT

Richard Hernandez
McCARTER & ENGLISH, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Telephone: (973) 848-8615
Facsimile: (973) 297-6615

Paul C. Curnin (*pro hac vice* pending)
Craig S. Waldman (*pro hac vice* pending)
Daniel J. Stujenske (*pro hac vice* pending)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Facsimile: (212) 455-2502

*Attorneys for Defendants Valeant Pharmaceuticals International, Inc. and Robert L. Rosiello*
(*Additional counsel listed on signature page*)

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.     PLAINTIFFS' STATE LAW CLAIMS ALLEGE A MISREPRESENTATION IN
       CONNECTION WITH THE PURCHASE OF A COVERED SECURITY ..................... 2

       A.     Valeant Notes Are Covered Securities Under SLUSA ............................................ 2

       B.     Plaintiffs Allege Misrepresentations In Connection With Purchases of
              Covered Securities ................................................................................................. 4

II.    THE NON-TOLLED FEDERAL CLAIMS ARE UNTIMELY ....................................... 7

       A.     *American Pipe* Does Not Toll Plaintiffs' Untimely Claims ................................... 7

              1.     *American Pipe* Tolling Only Applies To Claims Filed After A Class
                     Certification Decision ................................................................................ 7

              2.     The Class Action Did Not Toll Plaintiffs' Section 18 Claims ................... 9

       B.     The Statute Of Repose Limits Plaintiffs' Claims ................................................. 10

CONCLUSION ............................................................................................................... 11

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*2012 Dynasty UC LLC v. Valeant Pharm. Int'l, Inc.*,
   2018 WL 6492764 (D.N.J. Dec. 10, 2018)............................................................... 1

*American Pipe & Constr. Co. v. Utah*,
   44 U.S. 538 (1974)........................................................................................................ 7

*California Pub. Emps.' Ret. Sys. v. ANZ Sec. Inc.*,
   137 S. Ct. 2042 (2017)................................................................................................. 9

*Chadbourne & Parke LLP v. Troice*,
   571 U.S. 377 (2014)..................................................................................................... 5

*Child.'s Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*,
   2011 WL 13220509 (C.D. Cal. Aug. 22, 2011)......................................................... 10

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018).......................................................................................... 8, 9, 10

*Crown, Cork & Seal Co., Inc. v. Parker*,
   462 U.S. 343, 353 (1983)............................................................................................ 8

*Crump v. Passaic Cty.*,
   147 F. Supp. 3d 249 (D.N.J. 2015)............................................................................ 10

*Fimbel v. Fimbel Door Corp.*,
   2014 WL 6992004 (D.N.J. Dec. 10, 2014)................................................................. 6

*Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*,
   2018 WL 4401731 (D.N.J. Sept. 14, 2018)............................................................... 1

*Hubbard v. Corr. Med. Servs., Inc.*,
   2008 WL 2945988 (D.N.J. July 30, 2008).................................................................. 7

*In re Exxon Mobil Corp. Sec. Litig.*,
   500 F.3d 189 (3d Cir. 2007)....................................................................................... 11

*In re Stillwater Capital Partners Inc. Litig.*,
   851 F. Supp. 2d 556 (S.D.N.Y. 2012)........................................................................ 3

*In re Valeant Pharm. Int'l Inc. Sec. Litig.*,
   2017 WL 1658822 (D.N.J. Apr. 28, 2017)................................................................. 3

*Knopick v. UBS Fin. Servs. Inc.*,
121 F. Supp. 3d 444 (E.D. Pa. 2015) ........................................................... 6

*Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v.*
*Valeant Pharm. Int'l, Inc.*,
2018 WL 3637514 (D.N.J. July 31, 2018) ........................................ 1, 2, 4, 6

*Luis v. RBC Capital Markets*,
2016 WL 6022909 (D. Minn. Oct. 13, 2016) ............................................... 3

*Merrill Lynch, Pierce, Genner & Smith Inc. v. Dabit*,
547 U.S. 71 (2006) ....................................................................................... 5

*Smart-El v. Corr. Med. Servs.*,
2008 U.S. Dist. LEXIS 44376 (D.N.J. June 5, 2008) .................................. 7

*Taksir v. Vanguard Group*,
903 F.3d 95 (3d. Cir. 2018) ...................................................................... 4, 5

*Thomas v. Corr. Med. Servs., Inc.*,
2009 WL 737105 (D.N.J. Mar. 17, 2009) .................................................. 7, 9

*Wallach v. Eaton Corp.*,
837 F.3d 356 (3d Cir. 2016) ...................................................................... 7, 8

*Weitzner v. Sanofi Pasteur Inc.*,
909 F.3d 604 (3d Cir. 2018) ......................................................................... 8

*Yang v. Odom*,
265 F. supp. 2d 469 (D.N.J. 2003) ............................................................ 10

*Yang v. Odom*,
392 F.3d 97 (3d Cir. 2004) ........................................................................ 10

**Statutes**

15 U.S.C. § 77r .......................................................................................... 2, 3

15 U.S.C. § 78bb ....................................................................................... 3, 6

**Other Authorities**

1 Bromberg & Lowenfels on Securities Fraud § 2:207 (2d ed.) .................... 3

Bloomenthal & Wolff, 3C Sec. & Fed. Corp. Law § 16:195 (2d
ed.) .............................................................................................................. 3

Covered Securities, Practical Law Glossary Item 0-612-0586 ..................... 3

Resales Under Rule 144A and Section "4(1½)," Practical Law
    Practice Note 6-382-8768 ........................................................................................... 3

SEC Release No. 121, 17 CFR Parts 200 and 230 (Apr. 23, 1990).................................................. 3

## PRELIMINARY STATEMENT

Northwestern's Opposition Brief confirms that the Court should not change course from decisions in related cases dismissing state law claims pursuant to SLUSA and also confirms that Plaintiffs' federal claims are untimely, to the extent not covered by a tolling agreement.

This is the fifth attempt by opt-out plaintiffs—and the fourth by the same counsel—to circumvent this Court's prior decisions dismissing nearly identical state law claims under SLUSA.[1]  Plaintiffs' arguments fail once again because (1) notes resold under Rule 144A are "covered securities" under SLUSA, and, (2) as this Court previously held, the note purchases are subject to SLUSA *even if* the notes were not covered securities because the alleged misrepresentations were made "in connection with" covered securities.  The Third Circuit's decision in *Taksir v. Vanguard Group*, on which Plaintiffs rely, is entirely consistent with the Court's prior SLUSA decisions.

Plaintiffs also acknowledge that their federal claims based on purchases made from March 16, 2016 through April 15, 2016 were filed after expiration of the statute of limitations for such claims and are not covered by a tolling agreement.  Plaintiffs argue these claims are saved by *American Pipe* tolling, but they concede that this District has unanimously rejected the application of *American Pipe* to opt-out cases filed before a decision on class certification. Plaintiffs' argument that a statute of repose runs from the last misdeed alleged rather than from

---

[1] *See Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v. Valeant Pharm. Int'l, Inc.*, 2018 WL 3637514, at *9–10 (D.N.J. July 31, 2018); *2012 Dynasty UC LLC v. Valeant Pharm. Int'l, Inc.*, 2018 WL 6492764, at *3 (D.N.J. Dec. 10, 2018); *Hound Partners Offshore Fund, LP v. Valeant Pharm. Int'l, Inc.*, 2018 WL 4401731, at *3–5, 5 n.16 (D.N.J. Sept. 14, 2018); *Catalyst Dynamic Alpha Fund v. Valeant Pharm. Int'l, Inc.*, No. 18-cv-12673, Dkt. No. 30, at 14–15 (D.N.J. Dec. 4, 2018) (Mem. of Law) (hereinafter "*Catalyst* Opp.").

each alleged violation is also irreconcilable with Supreme Court precedent and the purposes of statutes of repose.

## **ARGUMENT**

### I. **PLAINTIFFS' STATE LAW CLAIMS ALLEGE A MISREPRESENTATION IN CONNECTION WITH THE PURCHASE OF A COVERED SECURITY**

Plaintiffs concede that this is a "covered class action" and that claims arising from the purchase of Valeant common stock must be dismissed under this Court's prior SLUSA rulings. Opp. 2 n.1. However, Plaintiffs seek to avoid SLUSA's application by arguing that Valeant *notes* are not "covered securities" and purchasers of such notes did not purchase them "in connection with" a covered security. Plaintiffs are wrong on both fronts.

#### A. **Valeant Notes Are Covered Securities Under SLUSA**

In *Lord Abbett*, the Court concluded that it did not need to reach the issue of whether Valeant notes were "covered securities" because, no matter what, Plaintiffs' *allegations* of misrepresentations were undoubtedly "in connection with" covered securities—namely, Valeant common stock. 2018 WL 3637514, at *9–10. As discussed in Section I.B below, that conclusion remains correct. In any event, the plain language of SLUSA makes clear that Valeant's notes are covered securities because they are senior to other Valeant securities that are listed on the New York Stock Exchange. *See* Defs. Br. at 7; 15 U.S.C. § 77r(b)(1). Indeed, Plaintiffs do not dispute that Valeant notes are senior to its common stock and thus fall within that definition of "covered securities."

Instead, Plaintiffs argue that Valeant notes are excluded from SLUSA by a provision excluding debt securities that are "exempt from registration under the Securities Act of 1933 pursuant to rules issued by the Commission under section 4[(a)](2) of that Act." Opp. at 4–5

2

(quoting 15 U.S.C. § 78bb(f)(5)(E)).[2]  But this provision does not apply to the Valeant notes at issue.  By its plain language, the exclusion applies only to debt securities exempt from registration ***under Section 4(a)(2)***.[3]  Plaintiffs purchased their notes in resale offerings made under Rule 144A, which was promulgated under ***Section 4(a)(1)*** of the Securities Act, not Section 4(a)(2).  SEC Release No. 121, 17 CFR Parts 200 and 230 (Apr. 23, 1990).  Plaintiffs' argument that the SLUSA exclusion applies more broadly (Opp. at 5) is meritless.  Indeed, securities law treatises—including the *Bloomenthal* treatise upon which Plaintiffs rely (Opp. at 4 n.4)—clarify that SLUSA's exclusion from the definition of "covered security" "does not appear to be applicable to Rule 144A private offerings" because "Rule 144A is not an exemption for the issuer and the conceptual basis of Rule 144A is Section 4[(a)](1) of the Securities Act, not 4[(a)](2)."  Bloomenthal & Wolff, 3C Sec. & Fed. Corp. Law § 16:195 (2d ed.).[4]  Plaintiffs cite no authority applying the Section 4(a)(2) exemption to Rule 144A note offerings.

---

[2] Section 4(2) was redesignated Section 4(a)(2) by the JOBS Act.

[3] Plaintiffs' attempt to distinguish *Luis v. RBC Capital Markets*, 2016 WL 6022909, at *6 (D. Minn. Oct. 13, 2016), which held that "senior unsecured debt obligations" like the notes here are "covered securities," because it did not involve unregistered notes (Opp. at 5) is off point because the relevant question is not whether the notes were unregistered, but whether they were exempt from registration under Section 4(a)(2), specifically.  Many cases hold that "unregistered" securities are "covered securities" under SLUSA.  *See, e.g.*, *In re Stillwater Capital Partners Inc. Litig.*, 851 F. Supp. 2d 556, 563, 572 (S.D.N.Y. 2012) (holding that unregistered shares were "covered securities").  Similarly, this Court's dismissal of Section 12(a)(2) claims because securities sold in compliance with Rule 144A are not offered to the public has nothing to do with whether the securities are "covered" under SLUSA.  *See* Opp. at 4; *In re Valeant Pharm. Int'l Inc. Sec. Litig.*, 2017 WL 1658822, at *15 (D.N.J. Apr. 28, 2017).

[4] *See also* 1 Bromberg & Lowenfels on Securities Fraud § 2:207 (2d ed.) (explaining that Rule 144A offerings are not subject to the SLUSA covered security exemption because "§ 4[(a)](2) is not the source of  Rule 144A."); Resales Under Rule 144A and Section "4(1½)," Practical Law Practice Note 6-382-8768 (citing 15 U.S.C. § 77r(b)(4)(A) to show that "covered securities include the securities of reporting companies sold pursuant to the Section 4(a)(1) registration exemption, which includes Rule 144"); Covered Securities, Practical Law Glossary Item 0-612-0586 ("[R]eporting company securities sold in Rule 144A offerings are covered securities.").

Because the notes are covered securities, SLUSA compels dismissal of all of Plaintiffs'

state law claims and no further inquiry is required.

### B.    Plaintiffs Allege Misrepresentations In Connection With Purchases of Covered Securities

Even if the notes are not covered securities (they are), Plaintiffs' claims are subject to

dismissal for the same reasons the Court explained in *Lord Abbett*.  The Opposition provides no

reason to depart from this precedent.

Plaintiffs argue that they do not allege misrepresentations "in connection with" purchases

of covered securities because certain Plaintiffs only purchased notes, which they claim are

"uncovered securities."  Opp. at 1–2.  But, in *Lord Abbett*, one set of plaintiffs similarly

purchased only notes, and this Court held that regardless of whether the notes were covered

securities, SLUSA applied because the allegations were "in connection with" trades in Valeant's

common stock and thus "the underlying fraud involve[d] a 'covered' security, which

subsequently impacted the price of notes at issue."  2018 WL 3637514, at *7 n.17, *9.  Like in

*Lord Abbett*, Plaintiffs allege that Defendants "took advantage of the artificially inflated price of

[Valeant's] securities to conduct numerous debt and equity offerings . . . at artificially inflated

prices."  Compl. ¶ 340.  Thus, Plaintiffs' allege that the "fraud involve[d] a 'covered' security,

which subsequently impacted the price of the notes," regardless of whether the notes are

"covered."  2018 WL 3637514, at *9; *see also* Defs. Br. at 8–9.

Plaintiffs do not dispute that *Lord Abbett* requires dismissal of their claims, but, unhappy

with that result, argue that *Taksir v. Vanguard Group*, 903 F.3d 95 (3d. Cir. 2018), changed the

law.  Opp. at 3, 5–6.  This is incorrect, and indeed, no party has moved for reconsideration or

relief from the *Lord Abbett* decision on the ground of changed law.  *Taksir* addressed whether

SLUSA "bars investors' claims that their broker overcharged them [sales commission fees] . . .

for the execution of certain securities transactions." 903 F.3d at 95–96. The Third Circuit explicitly distinguished those claims from claims like Plaintiffs' here, which allege that defendants made misrepresentations affecting the price of securities. *Id.* at 100 (noting that "the facts of this case are in plain contrast to [cases concerning] the fraudulent manipulation of stock prices"). The Third Circuit held in *Taksir* that inflated sales commissions did not trigger SLUSA because they were not material to the plaintiffs' decision to purchase securities. *Id. Taksir* did not mention what type of securities were being purchased because whether or not those securities were "covered" was simply not an issue in the case.

Plaintiffs argue that *Taksir* created a "transaction-based test," a term coined by Plaintiffs (Opp. at 1–3) that is nowhere to be found in that opinion or in any other case interpreting *Taksir*. The *Taksir* court focused on the "connection between the overcharges and trades at issue," 903 F. 3d at 98, and never set forth anything remotely close to the two-part test that Plaintiffs attempt to extract from it. Opp. at 10. Instead, the Third Circuit focused on whether inflated sales commissions, if considered misrepresentations, were material to an investor's decision to purchase securities from a certain broker. *Taksir*, 903 F. 3d at 99. Nor did *Taksir* somehow "reject[] the 'coincide' test for determining if a claim is 'in connection with' a covered security." Opp. at 1. Under that test, set forth in *Merrill Lynch, Pierce, Genner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006), "it is enough that the fraud alleged 'coincide' with a securities transaction" to satisfy SLUSA's "in connection with" requirement. The *Taksir* court approvingly cited the "coincide test" and emphasized that the Supreme Court "was not modifying [it]" when it decided *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014). *Taksir*, 903 F. 3d at 97–98.[5]

---

[5] In *Troice*, the Supreme Court held that SLUSA requires that the misrepresentation have a "material connection with a transaction in a covered security." 571 U.S. at 387. In *Lord Abbett*, this Court considered the impact of *Troice* on the "coincide test" and determined that purchasers

Plaintiffs' argument that *Taksir* limits SLUSA's application exclusively to the purchase of covered securities (Opp. at 9–11) is also irreconcilable with the plain text of SLUSA.  Indeed, the question is whether Plaintiffs allege "a misrepresentation . . . *in connection with* the purchase or sale of a covered security."  15 U.S.C. § 78bb(f)(1) (emphasis added).  In this case, Plaintiffs allege that misrepresentations had a material impact on their decision to purchase securities: they purportedly "directly relied on Defendants' false and misleading statements . . . when deciding to purchase Valeant securities."  Compl. ¶ 352.  Plaintiffs broadly allege that they purchased securities—without differentiating between notes and stock—due to misrepresentations.  *E.g.*, Compl. ¶¶ 361, 370.  Plaintiffs' assertion that "[t]he Note Plaintiffs do not claim that they were induced into purchasing Valeant's common stock or any other covered security" (Opp. at 9), is contrary to their Complaint.[6]  Plaintiffs do not (and could not) separate out which misrepresentations were in connection with purchases of common stock and which were in connection with notes, and the Court is not required to make such an inquiry.  *See Knopick v. UBS Fin. Servs. Inc.*, 121 F. Supp. 3d 444, 458 & n.17 (E.D. Pa. 2015) (applying SLUSA and refusing to "segregate out" uncovered securities from covered securities to circumvent SLUSA because the case involved "the sale of a wide variety of investment options, all of which were

_____

of Valeant notes still alleged misrepresentations "in connection with" purchases of common stock.  2018 WL 3637514, at *9 ("Whereas, the plaintiffs in *Troice* could not link their purchase to any 'transactions in covered securities,' [] all of Plaintiffs' claims here originate from fraudulent statements that caused Valeant stock to trade at inflated prices.").

[6] Plaintiffs assert for the first time in the Opposition that two Plaintiffs purchased only notes (Opp. at 1)—facts that are conspicuously absent from the Complaint.  "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."  *Fimbel v. Fimbel Door Corp.*, 2014 WL 6992004, at *6 (D.N.J. Dec. 10, 2014).  But, even if the Complaint had alleged that certain Plaintiffs only purchased notes, that would not matter.  The Complaint asserts that all of Plaintiffs' investment managers—including the investment managers unique to the two Plaintiffs alleged to have purchased only notes—relied on alleged misstatements in making "decisions to purchase Valeant securities on behalf of" the note-only Plaintiffs.  Compl. ¶¶ 361, 370.

offered to Plaintiffs, upon the same allegedly false pretense"). Thus, Plaintiffs allege

misrepresentations "in connection with" trades of "covered securities."

## II.     THE NON-TOLLED FEDERAL CLAIMS ARE UNTIMELY

### A.     *American Pipe* Does Not Toll Plaintiffs' Untimely Claims

Plaintiffs concede that their federal claims not subject to their tolling agreement with

certain Defendants may survive only if the Court determines that the statute of limitations has

been tolled by *American Pipe & Constr. Co. v. Utah*, 44 U.S. 538 (1974). Opp. at 11. It has not.

### 1.     *American Pipe* Tolling Only Applies To Claims Filed After A Class Certification Decision

Plaintiffs agree that courts in this District unanimously hold that plaintiffs who opt out

before a decision on class certification may not invoke *American Pipe* tolling. Opp. at 14. There

is no reason to depart from Judges Hillman and Wigenton's carefully considered decisions.[7]

Grasping for in-circuit case law, Plaintiffs center their argument on *Wallach v. Eaton

Corp.* (Opp. at 12–13), where plaintiffs sought to intervene as **class representatives** because the

putative class representative was inadequate.[8]  837 F.3d 356, 363, 371 (3d Cir. 2016). The Third

Circuit found that such plaintiffs—who did ***not*** file a separate action—benefitted from *American

Pipe* tolling. *Id.* at 363, 371–72 (explaining that plaintiffs would be harmed if they could not

intervene because there was a risk that the named representative lacked standing). *Wallach*'s

holding was motivated by a "presumption of timeliness"—not present here—"for intervention

---

[7] *See Thomas v. Corr. Med. Servs., Inc.*, 2009 WL 737105, at *4 (D.N.J. Mar. 17, 2009); *Smart-El v. Corr. Med. Servs.*, 2008 U.S. Dist. LEXIS 44376, at *9 (D.N.J. June 5, 2008); *Hubbard v. Corr. Med. Servs., Inc.*, 2008 WL 2945988, at *7 (D.N.J. July 30, 2008).

[8] In *Catalyst*, apparently in recognition of *Wallach*'s irrelevance to this action, Plaintiffs' counsel mentioned *Wallach* only in passing. *Catalyst* Opp. at 7. Plaintiffs' counsel has abandoned its arguments that other Third Circuit decisions support a finding of *American Pipe* tolling. *See id.* at 7–8 (arguing that Third Circuit decisions not cited in the Opposition weigh in favor of tolling).

motions filed by purported class members" and a "general reluctance to dispose of a motion to intervene as of right on untimeliness grounds because the would-be intervenor actually may be seriously harmed if not allowed to intervene."[9]  *Id.* at 371–72.  This "reluctance" does not apply to Plaintiffs, who are not trying to salvage a class action, but instead want to proceed separately.

  The Supreme Court's recent *China Agritech* decision offers further support for this District's rule that *American Pipe* does not extend tolling to plaintiffs who opt out before a class certification decision.  In *China Agritech, Inc. v. Resh*, the Court refused to expand *American Pipe* and *Crown, Cork* beyond their specific holdings, explaining that those cases "addressed ***only*** putative class members who wish to sue individually ***after a class-certification denial***." 138 S. Ct. 1800, 1806 (2018) (emphasis added).  Plaintiffs claim that despite this clear language, the Supreme Court was not discussing the timing of an opt-out plaintiff's suit and that "[i]n context," the statement only "concerns what *actions* are covered."  Opp. at 15 (emphasis in original).  Additional context, however, confirms the Supreme Court's intention to reign in the scope of *American Pipe* and *Crown, Cork*: "Neither decision so much as hints that tolling extends to otherwise time-barred claims."  138 S.Ct. 1806.  Discussing *American Pipe* in light of *China Agritech*, the Third Circuit recently reiterated that "*American Pipe* is designed to protect individual claims ***filed after the denial of class certification***."  *Weitzner v. Sanofi Pasteur Inc*., 909 F.3d 604, 610 (3d Cir. 2018) (emphasis added).

---

[9] Plaintiffs argue that *Wallach*'s holding should be extended to opt-out plaintiffs who file separate actions prior to class certification.  As support, they argue that *Crown, Cork & Seal Co., Inc. v. Parker* itself extended *American Pipe* tolling from its original application to cover opt-out plaintiffs, as well.  Opp. at 13.  But *Crown, Cork* carefully extended *American Pipe* only to opt-out plaintiffs who file actions *after* a class certification decision is rendered.  462 U.S. at 353–54. In fact, the Supreme Court explained that the *American Pipe* rule was "designed to avoid" "needless multiplicity of actions" by opt-out plaintiffs before class certification.  *Id.* at 351.

Moreover, *China Agritech* confirmed that *American Pipe* tolling was intended to reduce the number of individual suits filed by plaintiffs by allowing them to assess whether to proceed independently after a class certification decision is rendered. *See* 138 S.Ct. at 1806–07 ("*American Pipe* tolls the limitation period for individual claims because economy of litigation favors delaying those [individual] claims until after a class-certification denial. If certification is granted, the claims will proceed as a class and there would be no need for the assertion of any claim individually. If certification is denied, only then would it be necessary to pursue claims individually."). Applying *American Pipe* to suits filed prior to a class certification decision would not economize litigation in this way. *See, e.g.*, *Thomas*, 2009 WL 737105, at *4 ("[A] plaintiff who chooses to file an independent action without waiting for a determination on the class certification issue may not rely on the *American Pipe* tolling doctrine.").[10]

### 2.    The Class Action Did Not Toll Plaintiffs' Section 18 Claims

Plaintiffs argue their Section 18 claims were tolled by the Class Action Complaint even though it did not include such claims. Opp. at 15–16. The weight of authority expressly rejects this overbroad reading of *American Pipe*. Def's. Br. at 15 (collecting cases).

The Third Circuit decisions cited by Plaintiffs (Opp. at 16) do not apply *American Pipe* tolling to claims for violations of statutes not included in an initial complaint. The Third Circuit's application of *American Pipe* tolling to "substantively identical" claims in *Yang v.*

---

[10] Plaintiffs seek support for their position in the holding in *California Public Employees' Retirement System v. ANZ Securities Inc*. that statutes of repose are not tolled by *American Pipe*. 137 S. Ct. 2042, 2053 (2017); Opp. at 13. There is none. The Supreme Court was fully aware that claims asserted after class certification is denied could be barred by the statute of repose when it decided *ANZ*. The Court rejected similar arguments to Plaintiffs', holding that even if "dismissal of [a plaintiff's] individual suit as untimely would eviscerate its ability to opt out," "[i]t does not follow . . . from any privilege to opt out that an ensuing suit can be filed without regard to mandatory time limits set by statute." 137 S. Ct. at 2053.

*Odom* involved a subsequent action bringing claims under the same statutes as the earlier-filed class action.  *Compare* 392 F.3d 97, 100, 112 (3d Cir. 2004) *with Yang v. Odom*, 265 F. supp. 2d 469, 469 (D.N.J. 2003).  *Crump v. Passaic Cty.* involved federal civil rights violations, not securities claims.  147 F. Supp. 3d 249, 261 (D.N.J. 2015).  Moreover, the *Crump* court did not hold that the statute of limitations was tolled; it deferred decision for further development of the factual record.  *Id.*  Courts that have actually resolved the issue have repeatedly held that Section 18 claims are not tolled by Section 10(b) claims filed in a class action:  "Section 18's actual reliance requirement precludes class-action treatment.  Therefore, almost by definition, filing a § 10(b) class action does not put a defendant on notice that it will be called upon to defend a § 18 claim."  *Child.'s Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, 2011 WL 13220509, at *4 (C.D. Cal. Aug. 22, 2011).[11]  These decisions are consistent with the Third Circuit's holding in *Yang* that *American Pipe* tolling does not apply to claims "inappropriate for class treatment."  392 F.3d at 104.[12]  Plaintiffs offer no reason to deviate from this precedent.

### B.    The Statute Of Repose Limits Plaintiffs' Claims

Plaintiffs concede that statutes of repose are not tolled by *American Pipe*.  Opp. at 13. They argue, without support, that the "last culpable act" standard discussed in *ANZ* means the statute of repose runs from the last alleged misstatement contained in the Complaint.  Opp. at 12 n.6.  This is contrary to controlling precedent, which Plaintiffs do not address, holding that an

---

[11] *See also* Defs.' Br. at 15 & n.11 (collecting cases).

[12] In *China Agritech*, the Supreme Court abrogated the distinction drawn in *Yang* between denials of class certification due to defects in the class, on the one hand, and deficiencies of the class representative, on the other hand, when determining whether *American Pipe* tolling applied to subsequent class actions, holding that subsequently-filed class actions are *never* tolled.  138 S.Ct. at 1809 n.5.

applicable statute of repose "begins to run on the date of the alleged misrepresentation." *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200 (3d Cir. 2007); Defs. Br. at 16.[13]

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss Counts I, II, III, VII, and VIII of the Complaint in full and Counts IV, V, and VI in part.

---

[13] Plaintiffs' counsel have abandoned their arguments in *Catalyst* that a continuous scheme theory extends the applicable statute of repose. *Compare Catalyst* Opp. at 12–14, *with*, Opp. at 12 n.6.

DATED: March 29, 2019

**DEBEVOISE & PLIMPTON LLP**

/s/  *Matthew Petrozziello*
Matthew Petrozziello
919 Third Avenue
New York, NY 10022
Telephone: (212) 909-6000
Fax: (212) 909-6836

Jonathan R. Tuttle (*pro hac vice*
forthcoming)
Ada F. Johnson (*pro hac vice* forthcoming)
801 Pennsylvania Avenue, NW
Washington, D.C. 20004
Telephone: (202) 383-8000
Fax: (202) 383-8118

*Counsel for J. Michael Pearson*

**McCARTER & ENGLISH, LLP**

/s/   *Richard Hernandez*
Richard Hernandez
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
Telephone: (973) 848-8615
Fax: (973) 297-6615

*Local counsel for Valeant Pharmaceuticals*
*International, Inc. and Robert L. Rosiello*

**SIMPSON THACHER & BARTLETT LLP**

Paul C. Curnin (*pro hac vice* pending)
Craig S. Waldman (*pro hac vice* pending)
Daniel J. Stujenske (*pro hac vice* pending)
425 Lexington Avenue
New York, NY 10017-3954
Telephone: (212) 455-2000
Fax: (212) 455-2502

*Counsel for Valeant Pharmaceuticals*
*International, Inc. and Robert L. Rosiello*

12