## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTHWESTERN MUTUAL LIFE INSURANCE CO., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> VALEANT PHARMACEUTICALS INTERNATIONAL, INC., *et al.*, <br><br> Defendants. | Civil Action No. 18-15286 (MAS) (LHG) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Valeant Pharmaceuticals International, Inc., n/k/a Bausch Health Companies Inc. ("Valeant"), J. Michael Pearson ("Pearson"), and Robert L. Rosiello's ("Rosiello") (collectively, "Valeant Defendants") Motion to Dismiss (ECF No. 18); Defendant Howard B. Schiller's ("Schiller") Motion to Dismiss (ECF No. 17); and Defendant Tanya Carro's ("Carro") Motion to Dismiss (ECF No. 19). Plaintiffs Northwestern Mutual Life Insurance Co.; Northwestern Mutual Series Fund, Inc. – High Yield Bond Portfolio; and Northwestern Mutual Series Fund, Inc. – Research International Core Portfolio (collectively, "Northwestern Mutual") opposed Valeant Defendants', Schiller's, and Carro's (collectively, "Defendants") motions in a single brief. (ECF No. 27.) Defendants replied in separate briefs. (ECF Nos. 36, 37, 38.)

The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendants' Motions to Dismiss are granted.

## I.   BACKGROUND[1]

The Court has previously summarized many of the factual allegations at issue in memorandum opinions in related matters. *See, e.g., In re Valeant Pharm. Int'l, Inc. Sec. Litig.*, No. 15-7658, 2017 WL 1658822 (D.N.J. Apr. 28, 2017), *reconsideration denied*, 2017 WL 3880657 (D.N.J. Sept. 5, 2017). The Court assumes the parties' familiarity with those allegations and only recounts the factual background and procedural history necessary to decide the instant motions.

On October 22, 2015, Laura Potter brought a putative class action on "behalf of all persons who purchased or otherwise acquired Valeant stock between February 23, 2015 and October 20, 2015, inclusive . . . , against Valeant and certain of its officers and/or directors for violations of the Securities Exchange Act of 1934 . . . ." *In re Valeant*, No. 15-7658 (D.N.J.), Compl. ¶ 1, ECF No. 1. On May 31, 2016, the Court consolidated Ms. Potter's action with several other actions, and pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4, the Court appointed Lead Counsel and a Lead Plaintiff in the consolidated action. *In re Valeant*, Order 3, ECF No. 67.

On June 24, 2016, Lead Plaintiff and Named Plaintiff filed a Consolidated Class Complaint (the "Class Complaint"). *In re Valeant*, Consol. Compl., ECF No. 80. The Class Complaint was "brought on behalf of purchasers of Valeant equity securities and senior notes between January 4,

---

[1] For the purpose of deciding the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

2013 and March 15, 2016, inclusive ("Class" and "Class Period"), seeking to pursue remedies under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), [Securities Exchange Commission ("SEC")] Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), and §§ 11, 12(a)(2), and 15 of the Securities Act of 1933 ("Securities Act")." *Id.* ¶ 1. Lead Plaintiff and Named Plaintiff brought nine claims. *Id.* ¶¶ 538-50, 572-728. On April 28, 2017, the Court decided six motions to dismiss filed by various groups of defendants in the *Valeant Class Action. See In re Valeant*, 2017 WL 1658822, at \*1.

Northwestern Mutual "purchased Valeant securities between January 15, 2013 and April 15, 2016" and alleged that those purchases were "at prices that were materially inflated as a result of [Defendants'] misrepresentations, omissions, and other unlawful conduct . . . ." (Compl. ¶ 21, ECF No. 1.) Northwestern Mutual filed its complaint on October 24, 2018. (*See generally id.*) Northwestern Mutual brings eight total counts. (*Id.* ¶¶ 391-458.) Northwestern Mutual brings six counts against all defendants: Count I—Racketeering in Violation of N.J.S.A. § 2C:41-2(c); Count II—Racketeering in Violation of N.J.S.A. § 2C:41-2(d); Count III—Aiding and Abetting Racketeering in Violation of N.J.S.A. § 2C:41-2(c), (d); Count IV—Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5; Count VII—Common Law Fraud/Fraudulent Inducement; and Count VIII—Negligent Misrepresentation. (*Id.* ¶¶ 391-423, 441-58.) Northwestern Mutual brings Count V—Violations of Section 18 of the Exchange Act, 15 U.S.C. § 78r—against Valeant, Pearson, and Rosiello, and Count VI—Violations of Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a)—against Pearson, Schiller, and Rosiello. (*Id.* ¶¶ 424-40.)

On February 8, 2019, Defendants filed their respective Motions to Dismiss. (Schiller's Mot. to Dismiss, ECF No. 17; Valeant Defs.' Mot. to Dismiss, ECF No. 18; Carro's Mot. to Dismiss, ECF No. 19.) Schiller moved for dismissal of Plaintiffs' claims against him in their

entirety. (Schiller's Mot. to Dismiss 1.) Valeant Defendants moved for dismissal of Counts I, II, III, VII, and VIII in full and Counts IV, V, and VI in part. (Valeant Defs.' Mot. to Dismiss 1.) Carro moved for dismissal of Counts I, II, III, IV, VII, and VIII as to her. (Carro's Mot. to Dismiss 1.)

Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), Valeant Defendants argue Northwestern Mutual's state law claims are preempted by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") and a portion of Northwestern Mutual's federal claims are untimely.[2] (*See generally* Valeant Defs.' Moving Br., ECF No. 18-1.) On the issue of timeliness, Valeant Defendants assert: (1) Northwestern Mutual's federal claims are barred by the applicable statute of limitations; (2) by filing an individual action prior to class certification, Northwestern Mutual forfeited any tolling of its Section 10(b) and Rule 10b-5 claims that would have been available pursuant to *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974); (3) there is no basis to toll Northwestern Mutual's Section 18 claims because similar claims were not filed in *In re Valeant*; and (4) a portion of Northwestern Mutual's claims are barred by the applicable statute of repose. (*Id.* at 9-18.) Schiller and Carro join, as applicable, Valeant Defendants' arguments.[3] (Schiller's Moving Br. 1; Carro's Moving Br. 1, ECF No. 19-1.) Schiller

---

[2] Valeant Defendants state that there is a tolling agreement between Valeant Defendants and Northwestern Mutual. (*See* Valeant Defs.' Moving Br. 1, ECF No. 18-1.) The tolling "agreement covered only claims related to purchases of Valeant securities prior to March 16, 2016." (*Id.*) Valeant Defendants, accordingly, seek dismissal of only those claims not covered by the tolling agreement (*e.g.* those claims based on purchases of Valeant securities from March 16, 2016 through April 15, 2016). (*Id.*)

[3] Schiller and Carro join in Valeant Defendants' arguments and do not advance any independent arguments. (*Compare* Valeant Defs.' Moving Br., *with* Schiller's Moving Br., ECF No. 17-1, *and* Carro's Moving Br. 1, ECF No. 19-1.) The Court, accordingly, cites to the Valeant Defendants' brief when addressing Defendants' arguments.

and Carro are not parties to the tolling agreement between Valeant Defendants and Northwestern Mutual and move to dismiss all of Northwestern Mutual's federal claims as untimely. (Schiller's Moving Br. 1; Carro's Moving Br. 1.)

On March 8, 2019, Northwestern Mutual opposed Defendants' motions in an omnibus brief. (Pls.' Opp'n Br., ECF No. 27.) Northwestern Mutual maintains that its state law claims are not preempted by SLUSA because (1) the securities at issue are not "covered securities" as defined in the statute, and (2) the Third Circuit's holding in *Taksir v. The Vanguard Group*, 903 F.3d 95 (3d Cir. 2018), narrowed the applicable test. (*Id.* at 2-11.) Northwestern Mutual asserts that *American Pipe* tolling applies to its federal claims. (*Id.* at 11-16.)

On March 29, 2019, Valeant Defendants, Schiller, and Carro replied to Northwestern Mutual's Opposition. (Valeant Defs.' Reply Br., ECF No. 37; Schiller's Reply Br., ECF No. 36; Carro's Reply Br., ECF No. 38.) Schiller and Carro advance the same rebuttal arguments as Valeant Defendants. (*Compare* Valeant Defs.' Reply Br., *with* Schiller's Reply Br., *and* Carro's Reply Br.)

## II.  LEGAL STANDARD

District courts must consider a Rule 12(b)(6) motion under a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, it must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff, while setting aside conclusory allegations proffered in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). Third, the court "must then determine whether the 'facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

The Court, first, addresses whether Northwestern Mutual's state law claims are preempted by SLUSA. The Court then addresses whether Northwestern Mutual's federal securities claims are timely.

### A.   Northwestern Mutual's Claims are Preempted by SLUSA

SLUSA provides, in relevant part:

> No *covered class action* based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
> (A) a misrepresentation or omission of a material fact *in connection with* the purchase or sale of a *covered security*; or
>
> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a *covered security*.

15 U.S.C. § 78bb(f)(1) (emphasis added). As relevant here, a "covered class action" is:

> [A]ny group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which—(I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose.

15 U.S.C. § 78bb(f)(5)(B)(ii). A "covered security" is:

> [A] security that satisfies the standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the Securities Act of 1933, at the time during which it is alleged that the misrepresentation, omission, or manipulative or deceptive conduct occurred, except that such term shall not include any debt security that is exempt from registration under the Securities Act of 1933 pursuant to rules issued by the Commission under section 4[(a)](2)[4] of that Act.

---

[4] Section 4(2) was re-designated Section 4(a)(2) by the JOBS Act. *See* Pub.L. 112-106, Title II, § 201(b)(1), (c)(1), Apr. 5, 2012, 126 Stat. 314.

15 U.S.C. § 78bb(f)(5)(E). Paragraph (1) of Section 18(b) of the Securities Act defines a "covered security" as "(A) a security designated as qualified for trading in the national market system . . . or authorized for listing, on a national securities exchange (or tier or segment thereof); or (B) a security of the same issuer that is equal in seniority or that is a senior security to a security described in subparagraph (A)." 15 U.S.C. § 77r(b).

On multiple occasions, the Court has determined that the same claims Northwestern Mutual brings here are preempted by SLUSA. *See e.g.*, *Catalyst Dynamic Alpha Fund v. Valeant Pharm. Int'l, Inc.*, No. 18-12673, 2019 WL 2331631, at *4 (D.N.J. May 31, 2019); *2012 Dynasty UC LLC v. Valeant Pharm. Int'l, Inc.*, No. 18-08595, 2018 WL 6492764, at *3 (D.N.J. Dec. 10, 2018); *Lord Abbett Inv. Tr.-Lord Abbett Short Duration Income Fund v. Valeant Pharm. Int'l, Inc.*, No. 17-6365, 2018 WL 3637514, at *10 (D.N.J. July 31, 2018). In *Lord Abbett*, the plaintiffs argued that the securities at issue were not "covered securities" and, as a result, SLUSA preemption did not apply.[5] *Lord Abbett*, 2018 WL 3637514, at *9. The Court found that allowing the *Lord Abbett* plaintiffs to "proceed on their state law negligent misrepresentation and fraud claims . . . would directly contravene Congress's intent behind [SLUSA's] preemption provision as interpreted by the Supreme Court in" *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006).[6] *Id.* at *10.

Here, Defendants urge the Court to reach the same conclusion it reached in *Lord Abbett*, and find that Northwestern Mutual's state law claims are preempted by SLUSA. (Valeant Defs.'

---

[5] The Court notes that the same counsel represents Northwestern Mutual and the plaintiffs in the three cited cases.

[6] Northwestern Mutual does not argue that this matter is not a "covered class action." The Court, accordingly, finds that this matter is a "covered class action" for the reasons articulated in *Catalyst Dynamic*, 2019 WL 2331631, at *3-4, and *2012 Dynasty*, 2018 WL 6492764, at *3-4.

Moving Br. 6-9.) Defendants argue that Valeant notes and stock are "covered securities" under SLUSA and even if they are not, the alleged "underlying fraud involved a 'covered security', namely, common stock, which subsequently impacted the price of the notes at issue." (*Id.* at 7-8 (alterations omitted).)

Northwestern Mutual contends the notes purchased by Northwestern Mutual Life Insurance Co. and Northwestern Mutual Series Fund, Inc. – High Yield Bond Portfolio (collectively, "Notes Plaintiffs"), and Valeant's unregistered 144A debt securities ("Valeant Notes"), are not "covered securities" under SLUSA. [7] (Pls.' Opp'n Br. 2-11.) Notes Plaintiffs state that in *Lord Abbett* the Court did not determine that Valeant's Senior Notes are "covered securities." (*Id.* at 2.) Notes Plaintiffs declare that the definition of a "covered security" excludes securities exempt from registration pursuant to rules issued by the Securities Exchange Commission ("SEC") under Section 4(a)(2) of the Exchange Act. (*Id.* at 4.) Notes Plaintiffs aver that Valeant relied on Section 4(a)(2) of the Exchange Act "because that is the statutory foundation for registration exemptions available to issuers." (*Id.*)

Notes Plaintiffs' arguments that Valeant Notes are not "covered securities" are unpersuasive. First, the rulemaking history of Rule 144A makes clear that the statutory basis for the rule is Section 4(a)(1) of the Exchange Act, not Section 4(a)(2). Resale of Restricted Securities; Changes to Method of Determining Holding Period of Restricted Securities Under Rules 144 and 145, 55 Fed. Reg. 17,933, 17,943 (Apr. 23, 1990) ("Rule 144A is being adopted by the Commission and Rules 144 and 145 are being amended by the Commission pursuant to Sections

---

[7] Northwestern Mutual Series Fund, Inc. – Research International Core Portfolio ("Northwestern Research") only purchased Valeant common stock and concedes the Court's prior rulings preclude its state law claims. (Pls.' Opp'n Br. 2 n.1.) The Court, accordingly, finds Northwestern Research's state law claims are preempted by SLUSA.

2(11), 4(1), 4(3), and 19(a) of the Securities Act of 1933.") Second, as explained in one commentary, the legislative history of the definition of "covered securities" suggests that the exclusion in the definition "does not appear to be applicable to Rule 144A private offerings." 3C Harold S. Blumenthal & Samuel Wolff, *Securities & Federal Corporate Law* § 16:195 (2d ed. 2019). According to the same commentary, the "senior securities of a company with nationally traded securities are also covered securities." *Id.* The Court, therefore, finds that the Valeant Senior Notes are "covered securities" under SLUSA.[8]

Notes Plaintiffs also argue that *Taksir*, which post-dates the Court's decision in *Lord Abbett*, narrowed the test for "in connection with." (Pls.' Opp'n Br. 6-11.) They assert that "*Taksir* definitively held that broadly coinciding with a transaction in covered securities is not enough." (*Id.* at 7.) Notes Plaintiffs derive a two-part test from *Taksir*: first, the Court should "identify the transaction the plaintiff alleges was induced by the fraud, and second, determine whether *that* transaction was in a covered security." (*Id.* at 8 (emphasis in original).) Notes Plaintiffs urge the Court "to apply the *Taksir* test here, and evaluate whether *their transactions* in the Valeant Notes were in a covered security . . . ." (*Id.* at 9 (emphasis in original).) Notes Plaintiffs aver that their transactions in Valeant Notes were not in connection with covered securities and "not connected to [Valeant] common stock, directly or indirectly[,]" and "[t]herefore, under *Taksir*, . . . SLUSA does not preclude the Note[s] Plaintiffs' state law claims." (*Id.* at 11.)

---

[8] The Court's previous dismissal of claims brought pursuant to Section 12(a)(2) of the Securities Act does not command a different result. In *In re Valeant*, the specific issue before the Court was "whether Rule 144A registration requires dismissal of Securities Act Section 12 claims of liability." *In re Valeant*, 2017 WL 1658822, at *15. Because Section 12 only applies to public offerings, the impact of a Rule 144A registration was determinative of whether the Section 12 claim could proceed. Here, whether the offering was public or private does not resolve the issue of whether Valeant Senior Notes are a "covered security."

Defendants disagree with Notes Plaintiffs' interpretation of *Taksir*. (Valeant Defs.' Reply Br. 4-7.) Defendants contend that "[t]he Third Circuit explicitly distinguished" the claims asserted in *Taksir* from claims like those asserted by Notes Plaintiffs. (*Id.* at 5.) Defendants state that the "transaction-based test" Notes Plaintiffs extrapolate from *Taksir* is not located in the "opinion or in any other case interpreting *Taksir*." (*Id.*) Defendants argue that the *Taksir* court did not reject the "coincide test"; rather the "[Third Circuit] approvingly cited the 'coincide test' and emphasized that the Supreme Court 'was not modifying [it]' when it decided *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014)." (*Id.* (quoting *Taksir*, 903 F.3d at 97).) Defendants point out that Northwestern Mutual's Opposition Brief is the first time that Northwestern Mutual distinguishes between the securities purchased by the individual plaintiffs. (*Id.* at 6 n.6.)

Notes Plaintiffs' interpretation of *Taksir* is flawed. At issue in *Taksir* was whether alleged overcharges on sales commissions for stock trades were in connection with the purchase or sale of a covered security. *Taksir*, 903 F.3d at 97. The Third Circuit noted that "the facts of [*Taksir*] are in plain contrast to: . . . the fraudulent manipulation of stock prices in *Dabit*." *Id.* at 100. The Third Circuit did not narrow the test for "in connection with." Rather, it explicitly relied on the Supreme Court's decisions in *Dabit* and *Troice* after stating that the Supreme Court in *Dabit* "embraced a seemingly broad interpretation of the phrase[,]" and noted that under Supreme Court precedent, "it is enough that the fraud alleged 'coincide' with a securities transaction—whether by the plaintiff or by someone else." *Id.* at 97 (quoting *Dabit*, 547 U.S. at 85). The Third Circuit further noted that the *Troice* majority addressed and rejected the *Troice* dissent's views that the holding altered *Dabit*. *Id.* Thus, *Troice* "clarifies—rather than modifies—*Dabit*." *Id.*

The Court finds that Northwestern Mutual alleges a misrepresentation or omission of a material fact in connection with the purchase of Valeant Notes. For each state law claim,

Northwestern Mutual alleges that Defendants made a false representation that had a direct impact on Northwestern Mutual's decision to purchase the Valeant Notes. (*See, e.g., Compl.* ¶ 397 ("Defendants knowingly, willfully, and unlawfully made misrepresentations or omissions of material fact for the purpose of improperly inflating the price of Valeant securities by misleading Plaintiffs and the investing public . . . . Plaintiffs []reasonably relied [on Defendants' statements] in electing to purchase and own Valeant securities, which they would not have done but for Defendants' fraudulent conduct."); *id.* ¶¶ 444, 447 ("The material representations set forth above were fraudulent, and Defendants' representations fraudulently omitted material statements of fact. . . . Plaintiffs justifiably relied on the Defendants' false representations and misleading omissions in purchasing Valeant Notes.); *id.* ¶ 456 ("Plaintiffs reasonably relied on the information Defendants provided and were damaged as a result of these misrepresentations and omissions. Plaintiffs would not have purchased Valeant Notes at all, or at the inflated prices they paid, had they known the true facts . . . .").)

Northwestern Mutual's Complaint makes clear that the alleged false statements and misrepresentations did not just "coincide" with Notes Plaintiffs' purchase of Valeant Notes. Notes Plaintiffs allege the statements were the "but-for" cause of their purchases or they reasonably relied on the statements when making the purchases. (*See id.* ¶¶ 397, 446, 447, 456.) The Court, accordingly, concludes that Northwestern Mutual alleges a misrepresentation or omission of a material fact in connection with the purchase of Valeant Notes, a covered security, and as a result, Notes Plaintiffs' state law claims are preempted by SLUSA.

## B.    Northwestern Mutual's Federal Claims are Untimely

Section 10(b) claims must be "brought not later than the earlier of—(1) [two] years after the discovery of the facts constituting the violation; or (2) [five] years after such violation."[9]  28 U.S.C. § 1658(b).  The limitations period for Section 10(b) claims "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (quoting 28 U.S.C. § 1658(b)(1)).  The standard focuses on the "reasonably diligent plaintiff . . . irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id.*  "A fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss." *Pension Tr. Fund for Operating Eng'rs v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 275 (3d Cir. 2013) (quoting *Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)).

"A statute of limitations defense is an affirmative defense that a defendant must usually plead in his [or her] answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015).  A statute of limitations defense can also be raised via a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).  The Court may grant the instant motion only "if the face of the complaint demonstrates that [Plaintiffs'] claims are untimely." *Id.* (quotations and citations omitted).

---

[9] In *Lord Abbett*, the Court concluded the rationale in *Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016), *as amended* (Apr. 29, 2016), persuasive and found that the two-year statute of limitations and five-year statute of repose in the Sarbanes-Oxley Act of 2002 applied to Section 18 claims. *Lord Abbett*, 2018 WL 3637514, at *8.  The Court adopts that finding in this matter.

In *Catalyst Dynamic*, the Court dismissed as untimely a complaint similar to, and at times verbatim to, the Complaint in this matter. (*See Catalyst Dynamic*, 2019 WL 2331631, at *7. *Compare* Compl., *with* Compl., *Catalyst Dynamic Alpha Fund v. Valeant Pharm. Int'l, Inc.*, No. 18-12673 (D.N.J.), ECF No. 1.) Because of the similarities between the *Catalyst Dynamic* complaint and the Class Complaint, the Court concluded that "a reasonably diligent plaintiff would have had enough facts to plead the instant claims with sufficient detail and particularity to survive a motion to dismiss by the time the Class Complaint was filed." *See Catalyst Dynamic*, 2019 WL 2331631, at *6. The Court, as a result, concluded that the federal claims in *Catalyst Dynamic* were untimely.[10] *Id.*

The Court's analysis in *Catalyst Dynamic* regarding timeliness of the complaint applies with equal force here: "[W]hen a complaint is filed alleging substantially similar claims as raised in the instant matter, a reasonably diligent plaintiff would have sufficient information about the facts necessary to adequately plead the requisite facts 'with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss.'" *Catalyst Dynamic*, 2019 WL 2331631, at *6 (quoting *Pension Tr. Fund*, 730 F.3d at 275.). In light of the similarities between the Complaint and the Class Complaint, the Court finds that a reasonably diligent plaintiff would have had enough facts to plead the instant claims with sufficient detail and particularity to survive a motion to dismiss by June 24, 2016, the date Class Complaint was filed. The Court, accordingly, finds Plaintiffs' federal law claims are untimely, absent the application of *American Pipe* tolling.

Perhaps in anticipation of the Court's finding, Northwestern Mutual appears to concede that the federal claims are untimely absent the application of the *American Pipe* doctrine. (*See*

---

[10] Because the *Catalyst Dynamic* plaintiffs argued that their complaint was timely even without the application of the *American Pipe* tolling doctrine, the Court granted the plaintiffs leave to amend out of an abundance of caution. *Catalyst Dynamic*, 2019 WL 2331631, at *7.

Pls.' Opp'n Br. 11 ("[A]ll of Plaintiffs' claims are timely, not just those tolled by agreement with the Valeant Defendants. The *American Pipe* doctrine has tolled the running of the statute of limitations on Plaintiffs' federal law claims . . . ." ).)

Defendants contend that by opting out of the class action in *In re Valeant* prior to a decision on class certification, Plaintiffs have forfeited *American Pipe* tolling. (Valeant Defs.' Moving Br. 12.) Defendants claim that courts in this district unanimously hold that a plaintiff that files an individual action prior to class certification may not avail itself of *American Pipe* tolling. (*Id.* (citing *Thomas v. Corr. Med. Servs., Inc.*, No. 04-3358, 2009 WL 737105, at *3 (D.N.J. Mar. 17, 2009)).) Defendants state that "[t]hese decisions are in accord with the rule in other circuits[,]" but acknowledge that there is a circuit split on this issue. (*Id.* at 12-13 n.10.) Defendants state that the Supreme Court's holding in *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800 (2018), supports the rationale of decisions denying *American Pipe* tolling to such actions. (*Id.* at 14.) Specifically, Defendants argue that "permitting tolling in such circumstances would reduce, rather than enhance, judicial economy." (*Id.*)

Northwestern Mutual frames Defendants' position as requesting the Court to "adopt a punitive rule" that is "incompatible with the purpose and history of *American Pipe*" tolling. (Pls.' Opp'n Br. 12.) Northwestern Mutual compares Defendants' position to the arguments the Third Circuit rejected in *Wallach v. Eaton Corp.*, 837 F.3d 356 (3d Cir. 2016). Specifically, Northwestern Mutual suggests that "implementing a forfeiture rule would undermine the *American Pipe* doctrine because class members 'would be compelled to intervene in *every* class action' in case the class representative was later found to be inadequate after a motion to intervene became untimely, creating even *more* inefficiencies." (*Id.* (quoting *Wallach*, 837 F.3d at 374).)

Northwestern Mutual also argues that "[i]f courts imposed a forfeiture rule, class members would rightly be concerned that the statute of repose might run on their claims before a decision on class certification," and, as a result, "the only logical move would be to forego reliance on *American Pipe* altogether and file preemptive individual actions before the statute of limitations has run." (*Id.* at 13.) Northwestern Mutual criticizes Defendants' reliance on District of New Jersey cases applying a forfeiture rule and state that "the majority of circuit courts to consider the forfeiture doctrine have rejected it, and it is increasingly disfavored even in courts where it was once enforced." (*Id.* at 13-14 (citing *In re WorldCom Sec. Litig.*, 496 F.3d 245 (2d Cir. 2007); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir. 2008); *In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986 (9th Cir. 2008)).) Northwestern Mutual asserts that *China Agritech* does not support Defendants' forfeiture argument because the specific issue presented here was not before the Supreme Court. (*Id.* at 14-15.)

In *American Pipe*, the Supreme Court held:

> [W]here class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status.

*Am. Pipe*, 414 U.S. at 552-53. The Supreme Court later clarified that *American Pipe* tolling "is not dependent on intervening in or joining an existing suit; it applies as well to putative class members who, after denial of class certification, 'prefer to bring an individual suit rather than intervene . . . once the economies of a class action [are] no longer available.'" *China Agritech*, 138 S. Ct. at 1804 (quoting *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983)). Thus, the contemporary understanding of the holding of *American Pipe* and its progeny is that:

> [T]he timely filing of a class action tolls the applicable statute of
> limitations for all persons encompassed by the class complaint.
> Where class-action status has been denied, . . . members of the failed
> class [may] timely intervene as individual plaintiffs in the
> still-pending action, shorn of its class character.

*Id.*

In *China Agritech*, the Supreme Court was presented with the question of whether after "denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?" *Id.* The Supreme Court's answer was "[in the negative] . . . . *American Pipe* does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *Id.*

The Supreme Court has not addressed whether a putative class member who commences an individual action prior to a decision on class certification may enjoy the benefits of the *American Pipe* doctrine to save otherwise untimely claims. The Third Circuit has not addressed this issue either. *See Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 710 (3d Cir. 2019) ("We also do not reach whether tolling applies to [the plaintiffs'] claims for individual relief even though they were filed before [the class action] ended, as [plaintiffs] offer no reason for their individual claims to survive other than those we reject above."); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 612 (3d Cir. 2018). Prior to the Supreme Court's decision in *China Agritech*, the Second, Tenth, and Ninth Circuits each held that a putative class member who brings an individual action prior to class certification would receive the benefit of *American Pipe* tolling. *See In re WorldCom*, 496 F.3d at 256 ("We hold that because Appellants were members of a class asserted in a class action complaint, their limitations period was tolled under the doctrine of *American Pipe* until such time as they ceased to be members of the asserted class, notwithstanding that they also filed individual actions prior to the class certification decision."); *Boellstorff*, 540 F.3d at 1228 ("We

anticipate that the Colorado Supreme Court would, as do we, find persuasive the reasoning of *In re WorldCom* . . . . We therefore hold that Colorado would apply the *American Pipe* doctrine to toll the statute of limitations for otherwise-stale individual claims filed before the class certification decision."); *In re Hanford*, 534 F.3d 986, 1009 (9th Cir. 2008) ("We therefore conclude that members of the plaintiff-class who have filed individual suits are entitled to the benefits of *American Pipe* tolling."). The Sixth Circuit, on the other hand, held that a putative class member who brings an individual action prior to class certification "may not rely [on the] . . . class action to suspend the limitations period on its fraud claims against [the defendant]." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 569 (6th Cir. 2005). Since the Supreme Court's holding in *China Agritech*, no Court of Appeals has ruled on the issue before the Court.

The issue before the Court is not whether Northwestern Mutual has "forfeited" *American Pipe* tolling. Framing the issue in this manner assumes Northwestern Mutual is entitled to the benefit of *American Pipe* tolling.[11] The parties' briefs make clear, and the Court agrees, there is no binding precedent establishing that Northwestern Mutual is entitled to *American Pipe* tolling. The Court, as a result, must determine whether in this instance the *American Pipe* doctrine should be expanded to a putative class member who files an individual action prior any decision on class certification. To resolve this issue, the Court considers the history and purpose of the *American*

---

[11] There is, perhaps, an argument that the broad language of the holding in *American Pipe*— which encompasses "all purported members of the class"—entitles Northwestern Mutual to *American Pipe* tolling. This argument, however, is significantly undermined by the result in *China Agritech*. In brief, the *China Agritech* Court described the respondent's putative class action as "untimely unless saved by *American Pipe*'s equitable-tolling exception to statutes of limitations." *China Agritech*, 138 S. Ct. at 1809. The *China Agritech* Court declined to extend the *American Pipe* tolling doctrine to a putative class action brought by an individual who was a member of a previous timely-filed class action, which was denied class certification. *Id.* at 1811. Thus, despite the broad language of the *American Pipe* holding, the Supreme Court declined to expand the doctrine.

*Pipe* doctrine and the context in which Northwestern Mutual requests the Court to apply the doctrine.

In *California Public Employees' Retirement System v. ANZ Securities, Inc.*, the Supreme Court examined the source of the *American Pipe* doctrine. 137 S. Ct. 2042, 2051-52 (2017). The *ANZ Securities* Court stated that "the source of the tolling rule applied in *American Pipe* is the judicial power to promote equity, rather than to interpret and enforce statutory provisions." *Id.* at 2051. The holding in *American Pipe* was "grounded in the traditional equitable powers of the judiciary[,]" with the Supreme Court describing its ruling "as authorized by the 'judicial power to toll statutes of limitations.'" *Id.* at 2052 (quoting *Am. Pipe*, 414 U.S. at 558). While "the *American Pipe* Court did not consider the criteria of the formal doctrine of equitable tolling in any direct manner. . . . [t]he balance of the Court's reasoning nonetheless reveals a rule based on traditional equitable powers, designed to modify a statutory time bar where its rigid application would create injustice." *Id.*

In *China Agritech*, the Supreme Court stated that "[t]he 'efficiency and economy of litigation' that support tolling of individual claims, [ ] do not support maintenance of untimely successive class actions . . . ." *China Agritech*, 138 S. Ct. at 1802 (quoting *Am. Pipe*, 414 U.S. at 553). "Economy of litigation favors delaying individual claims until after a class-certification denial." *Id.* The *China Agritech* Court also considered Federal Rule of Civil Procedure 23 ("Rule 23") and described it as "evinc[ing] a preference for preclusion of untimely successive class actions by instructing that class certification should be resolved early on." *Id.* Moreover, the PSLRA, "evinces a similar preference . . . embodied in legislation, for grouping class-representative filings at the outset of litigation." *Id.* Ultimately, the Supreme Court concluded, "[t]he watchwords of *American Pipe* are efficiency and economy of litigation, a principal purpose of Rule 23 as well.

Extending *American Pipe* tolling to successive class actions does not serve that purpose." *Id.* at 1811. Thus, the *China Agritech* Court adopted a rule that would encourage "putative class representatives to file suit well within the limitation period and seek certification promptly." *Id.*

The Third Circuit has identified "two primary purposes underlying the Supreme Court's holding in *American Pipe*." *Weitzner*, 909 F.3d at 611. First, the *American Pipe* doctrine encourages "efficiency and economy of litigation" because without the doctrine "potential class members would be induced to file protective motions to intervene or join." *Id.* (quoting *American Pipe*, 414 U.S. at 553). Second, the *American Pipe* doctrine "protect[s] the interests of putative unnamed class members who ha[ve] not received notice and were unaware of the pending class action." *Id.* Such class members have "no obligation to 'take note of the suit or to exercise any responsibility with respect to it' until the existence of the class has been established." *Id.* (quoting *American Pipe*, 414 U.S. at 552).

Here, Northwestern Mutual requests the Court to apply its equitable power to a situation where, if the Court declines to do so, there would be no injustice. Northwestern Mutual chose to file its complaint more than two years and four months after the Class Complaint. If Northwestern Mutual had waited until the Court's decision on class certification, Northwestern Mutual would have had two ways to bring its claims. If the Court denied class certification, Northwestern Mutual would have been entitled to assert its claim as timely because the statute of limitations would have been tolled pursuant to *American Pipe*. In the event the Court granted Class Certification, Northwestern Mutual would have had the opportunity to opt-out of the class and assert its timely claims. *See* Fed. R. Civ. P. 23(c)(2)(b)(v) (requiring notice to class members "that the court will exclude from the class any member who requests exclusion"). By filing an untimely pre-class certification individual action, Northwestern Mutual must rely on an expansion of the *American*

*Pipe* doctrine to encompass its claims. Although application of the *American Pipe* doctrine is not subject to the traditional analysis for whether the Court should grant equitable tolling, the Court notes that equitable tolling is applied "sparingly." *Glover v. F.D.I.C.*, 698 F.3d 139, 151 (3d Cir. 2012). Given that Northwestern Mutual's claims would be timely if Northwestern Mutual had pursued a different course of action, the Court cannot conclude that failing to expand *American Pipe* in this instance would result in an injustice.

On these facts, the Court finds that the expansion of the *American Pipe* doctrine here would not promote "efficiency and economy of litigation," one of the purposes of the *American Pipe* doctrine. As the Supreme Court stated, "Economy of litigation favors delaying individual claims until after a class-certification denial." *China Agritech*, 138 S. Ct. at 1802. Allowing Northwestern Mutual to bring its untimely claims prior to class-certification may encourage additional individual actions to be brought prior to class-certification. As demonstrated by the course of litigation in this matter and the matters consolidated in *In re Valeant*, in such a scenario, the Court will likely have to deal with dispositive motions rehashing legal and factual issues the Court previously addressed. Such a turn of events is neither efficient, nor a wise use of limited judicial resources.[12]

The Court disagrees with Northwestern Mutual's suggestion that failing to extend the *American Pipe* doctrine would encourage additional preemptive individual actions before the statute of limitations has run. (*See* Pl.'s Opp'n at 13.) Such putative plaintiffs would face a choice: wait until the results of class-certification are known and proceed accordingly with timely claims pursuant to *American Pipe*, or file prior to class certification and rely on the application of

---

[12] For these same reasons, the Court finds the holding in *In re Worldcom* unpersuasive. The Second Circuit did not have the benefit of *China Agritech* and the Supreme Court's articulation of the purpose of the *American Pipe* doctrine. Moreover, some of the statements in *In re Worldcom* regarding the purpose of *American Pipe* appear to be in tension with the *China Agritech* Court's articulation of the purpose of the *American Pipe* doctrine.

*American Pipe.* Automatically extending the *American Pipe* doctrine to untimely pre-class certification actions will not discourage such filings. Rather, it will encourage Plaintiffs to "wait[] out the statute of limitations to piggyback on an earlier, timely filed class action." *China Agritech*, 138 S. Ct. at 1806. The *China Agritech* Court recognized that a "rule, allowing no tolling for out-of-time class actions, will propel putative class representatives to file suit well within the limitation period and seek certification promptly." *Id.* at 1811. The same logic applies to the Court's decision to not apply the *American Pipe* doctrine in this instance. A rule encouraging putative class members to file their individual actions within the applicable statute of limitations period allows the Court to use the "ample tools at [its] disposal to manage the suits, including the ability to stay, consolidate, or transfer proceedings."[13] *Id.*

Northwestern Mutual is not a putative unnamed class member who never received notice of this action and must rely on the protection of the *American Pipe* doctrine. *See Weitzner*, 909 F.3d at 611. As Justice Sotomayor suggested in *China Agritech*, the PSLRA may change the analysis of the application of the *American Pipe* doctrine because it imposes "significant procedural requirements on securities class actions that do not apply to individual or traditionally joined securities claims." *China Agritech*, 138 S. Ct. at 1812 (Sotomayor, J., concurring). "Under

---

[13] The Court notes that Northwestern Mutual's argument regarding an influx of protective filings by individual plaintiffs concerned with their claims being untimely in light of the statute of repose appears to be undermined by the Supreme Court's holding in *ANZ Securities*. In that matter, the Supreme Court held that the *American Pipe* doctrine did not apply to the three-year statute of repose for violations of Section 13 of the Securities Act. Assuming that principle applies to claims under the Exchange Act, it may be inevitable that the Court faces a tide of such individual actions attempting to avoid the applicable statute of repose. Moreover, an increase of protective filings related to the statute of repose is not necessarily a consequence of the Court not applying the *American Pipe* doctrine to Northwestern Mutual's claims, which are barred by the applicable statute of limitations.

the PSLRA, the named plaintiff in a putative class action must publish within 20 days of filing the complaint a nationwide notice alerting putative class members to the filing of the suit . . . ." *Id.*

In *In re Valeant*, numerous notices were published alerting putative class members, including Northwestern Mutual, regarding the claims being asserted on their behalf. (*See* Lead Pl.'s Opp'n Br., Ex. A., *In re Valeant*, ECF No. 323-2 (collecting PSLRA notices related to the appointment of Lead Plaintiff)). Because Northwestern Mutual does not seek to represent a class, it had no obligation to act to preserve its claims under the *American Pipe* tolling doctrine. At the same time, because of the notice provisions of the PSLRA, by waiting more than two years after the filing of the Consolidated Class Action Complaint and three years after notice under the PSLRA was given, Northwestern Mutual "can hardly qualify as diligent in asserting claims and pursuing relief." *China Agritech*, 138 S. Ct. at 1808.

In *American Pipe*, the Supreme Court identified "[a] recurrent source of abuse" under a previous version of Rule 23, and extending *American Pipe* on facts like the instant matter invites such abuse. 414 U.S. at 547. Under the pre-1966 version of Rule 23, members of a putative class "could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests." *Id.* Thus, "[i]f the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment." *Id.* "The 1966 amendments were designed, in part, specifically to mend this perceived defect in the former Rule and to assure that members of the class would be identified before trial on the merits and would be bound by all subsequent orders and judgments." *Id.*

Here, Northwestern Mutual was able to wait on the sidelines of the litigation and observe two years of motion practice and determine whether its claims were viable. While Northwestern Mutual concedes certain portions of the Court's prior decisions control in this matter, Northwestern Mutual also contends other decisions do not. Thus, allowing Northwestern Mutual to benefit from *American Pipe* may only encourage future plaintiffs to sit back, await developments in the case as the strength of the parties' positions are tested through Rule 12 motion practice, and if there are favorable determinations, file an otherwise untimely individual action that is saved by the *American Pipe* doctrine. Such a result does not support the "efficiency and economy of litigation." *American Pipe*, 414 U.S., at 553.

In sum, the Court concludes that application of the *American Pipe* doctrine to Northwestern Mutual's federal law claims would not further the purposes of the doctrine. *Weitzner*, 909 F.3d at 609 ("[T]he tolling rule need not be applied mechanically. And it should not be applied where doing so would result in an abuse of *American Pipe*."). The Court, accordingly, denies Northwestern Mutual's request to apply the doctrine to its federal law claims. The Court, therefore, finds Northwestern Mutual's federal law claims to be untimely under the applicable statute of limitations.

**C.  Northwestern Mutual's Section 20(a) Claims**

To survive a motion to dismiss, a plaintiff bringing an action under Section 20(a) must plead: "(1) an underlying primary violation by a controlled person or entity; (2) that [the defendants] exercised control over the primary violator; and (3) that the [d]efendants, as 'controlling persons,' were in some meaningful sense culpable participants in the fraud." *Wilson v. Bernstock*, 195 F. Supp. 2d 619, 642 (D.N.J. 2002). "Liability under Section 20(a) is predicated upon an independent violation of [the Exchange Act] or the rules or regulations thereunder." *Id.*

(internal quotation marks omitted) (quoting *In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 317 (D.N.J. 2001)).

Here, Northwestern Mutual's Section 20(a) claims fail as to certain defendants based on the Court's finding that Northwestern Mutual's Section 10(b) and Section 18 claims are untimely. Count VI is brought against Pearson, Rosiello, and Schiller for violations of Section 20(a) of the Exchange Act. (Compl. ¶¶ 434-40.) Pearson and Rosiello aver that their tolling agreement with Plaintiffs "covered only claims related to purchases of Valeant securities prior to March 16, 2016." (Valeant Defs.' Moving Br. 1.) The Court's finding that Northwestern's Mutual's Section 10(b) and Section 18 claims are untimely results in Northwestern Mutual being unable to plead an underlying primary violation against Pearson and Rosiello for purchases made from March 16, 2016 through April 15, 2016. As to Schiller, because Schiller does not have a tolling agreement with Northwestern Mutual, Northwestern Mutual's Section 20(a) claims against Schiller fail entirely.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds that Northwestern Mutual's state law claims are preempted by SLUSA. The Court further finds that Northwestern Mutual's federal law claims are untimely. Because the Court finds that Northwestern Mutual's claims are not subject to *American Pipe* tolling, the Court does not reach Defendants' argument that the claims are barred by the statute of repose. The Court, accordingly, grants Defendants' respective Motions to Dismiss. An order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

**Dated:** September 10, 2019